GEORGIA ACUFF, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, a Corporation, Appellant.

Springfield Court of Appeals, March 11, 1922.

1. **INSURANCE: Prima-facie Case is Made by Proving that Deceased had Policy of Life Insurance at Time of Death, Introducing Policy and Proving Death.** In an action on a life insurance policy, where plaintiff is in possession of the policy at the time of the trial, or it is shown that the insured was in possession of it at his death, upon introducing the policy and proving the death of the insured, a prima-facie case is made.

2. ———: **Where Policy Was in Hands of Insurance Company, Prima-facie Case not Made by Proof of Issuance and Delivery and Death of Insured.** In an action on a life insurance policy by the wife of deceased, in which plaintiff's testimony was that deceased had plaintiff send for the policy to surrender it to defendant, and that an agent of defendant called on deceased, the fact that defendant had the policy at the time of trial, and the presumption that its possession was lawful until the contrary appeared, neutralized the presumption that the policy was alive at the time of the trial and was the property of plaintiff, and proof of issuance and delivery of the policy and payment of a premium thereon and the death of the insured was not sufficient to make a prima-facie case.

3. **EVIDENCE: In Case of Conflicting Presumptions, the One in Favor of Innocence. Must Prevail.** Where there are two conflicting presumptions, one of which is in favor of innocence, and another which would be followed with a taint of guilt, the one in favor of innocence must prevail.

Appeal from Pemiscot County Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

REVERSED.

*Jones, Hocker, Sullivan & Angert* and *Ward & Reeves* for appellant.

(1) The first five assignments of error really involve but one question, and that is whether or not it was the duty of the trial court to direct a verdict for defendant. (a) The respondent relies upon the proposition of law that in insurance cases the plaintiff makes a prima-facie case by the introduction in evidence of the policy sued upon, and making proof of death; and that the plaintiff having made a prima-facie case the trial court can never thereafter direct a verdict for defendant. Hay v. Bankers Life Co., 231 S. W. (Mo. App.) 1035; Keller v. Supply Co., 229 S. W. (Mo. Sup.) 173; Lafferty v. K. C. Casualty Co., 229 S. W. (Mo. Sup.) 750; Trust Co., v. Hill, 223 S. W. (Mo. Sup.) 434; Rasch v. Bankers Life Co., 201 S. W. (Mo. App.) 919; Quissenberry v. Steward, 219 S. W. (Mo. Sup.) 625; State ex rel. v. Reynolds, 277 Mo. 14; Harris v. Insurance Co., 248 Mo. 318; Goodin v. Modern Woodmen, 194 Mo. App. 666; Bange v. Supreme Counsel, 179 Mo. App. 21; Kelly v. K. of F. M., 179 Mo. App. 608; Troll v. Home Circle, 161 Mo. App. 719; Winn v. Modern Woodmen, 157 Mo. App. 1; Gannon v. Gas Co., 145 Mo. 502. (2) But the pleadings having narrowed the issues to the question of fraud in the surrender of the policy, the burden of proof to establish this allegation of fraud was upon the plaintiff. As plaintiff offered no proof of fraud the

verdict should have been directed for defendant. Vlates v. Catsigianis, 202 S. W. (Mo. App.) 44; Flood v. Bush, 165 Mo. App. 142; Gilbert v: Sietz, 170 Mo. App. 569; Paper Co. v. Publishing Co., 172 Mo. App. 495; Avory Co. v. Powell, 174 Mo. App. 628; Brown v. Ry. Co. 187 Mo. App. 104; Gass v. Evans, 244 Mo. App. 329; Kansas City v. Woerishoeffer, 249 Mo. 1; Troll v. St. Louis, 257 Mo. 626. (3) Besides, the matters alleged to have been misrepresented, that is, that insured had tuberculosis, being equally within the knowledge of the party to whom the representation was made, even through untrue, does not constitute fraud justifying the recission of the release. Davis v. Phoenix Ins. Co., 81 Mo. App. 264; Bradford v. Wright, 145 Mo. App. 623; Brown v. Railway, 187 Mo. App. 104; Hines v. Royce, 127 Mo. App. 718; Duffy v. Metropolitan Ins. Co., 94 Me. 414, 47 Atl. 905. (4) The plaintiff is precluded from setting aside the release or surrender of the policy on account of fraud, because she did not, prior to the institution of this suit, tender back to defendant the consideration for the surrender of the policy; and a tender after institution of suit (though there was none in this case except a conditional one pleaded in the reply) is too late. Boehm v. American Patriots, 172 Mo. App. 104; Loveless v. Cunard Mining Co., 201 S. W. (Mo. App.) 375; Reid v. Railway, 187 S. W. (Mo. Sup.) 15; Reed v. Gill & Sons, 201 Mo. App. 457; Wessel v. Waltke & Co., 190 S. W. (Mo. App.) 629. (5) The right to change the beneficiary, being reserved in the policy, the insured may change the beneficiary at will, and without the consent of the beneficiary. When such power is reserved in the policy the insured has no vested interest in the policy, but only a conditional interest. McKinney v. Ins. Co., 270 Mo. 305; Robinson v. Ins. Co., 168 Mo. App. 259; Clarkston v. Metropolitan Ins. Co., 190 Mo. App. 624; Missouri State Life Insurance Co. v. Cal. State Bank, 202 Mo. App. 347; Cornell v. Ins. Co., 179 Mo. App. 420. (6) "An affirmative defense, as to which the burden of proof is on defendant, may be made suffi-

ciently strong by clear and unequivocal verbal evidence, that, if same is not contradicted or impeached, the court will direct a verdict for defendant." Downs v. Horton, 230 S. W. (Mo. Sup.) 108; Kazee v. K. C. Ins. Co., 217 S. W. (Mo. App.) 339; Guthrie v. Holmes, 272 Mo. 215; Calhoon v. Mining Co., 209 S. W. (Mo. App.) 320; Vallery v. Hesse Bldg. Co., 211 S. W. (Mo. App.) 95; Ensign v. Crandall, 231 S. W. (Mo. App.) 675; Gates v. Ins. Co., 218 S. W. (Mo. App.) 927; Brunswick v. Ins. Co., 278 Mo. 173-6; Richey v. W. O. W., 163 Mo. App. 235; Rubeotton v. Telegraph Co., 194 Mo. App. 234; Bank v. Hainline, 67 Mo. App. 483; Moore v. Telegraph Co., 164 Mo. App. 165; Guffey v. Railway Co., 53 Mo. App. 462; Morgan v. Durfee, 60 Mo. 469.

*N. C. Hawkins,* for respondent.

(1) The beneficiary may recover notwithstanding surrender of the policy by the insured. Schoenholz v. New York Life, 175 N. Y. Sup. 684; Hiward v. John Hancock Life Ins. Co., 183 N. Y. S. 80; Taff v. Smith, 103 S. E. 551 (S. C.); Rumsey v. New York Life, 59 Colorado, 71; Holder v. Prudential, 57 S. E. 853 (S. C.). (2) After a prima-facie case has been made for the plaintiff, by the pleading or the evidence or by both, as here, it is a usurpation of authority to direct a verdict for defendant, except in cases where the defendant's evidence is admitted to be true, or sustained by documentary evidence which the opposite party is estopped to deny. Warren v. Ins. Co., 182 S. W. 96; Bryan v. Wear, 4 Mo. 106; Woods v. Ass'n, 50 Mo. 116; Lange v. Railway, 208 Mo. 458; Ice Co. v. Egg Co., 259 Mo. 693; Peterson v. Railway, 265 Mo. 479-80. (3) And this is true even though a plaintiff's case in part may rest upon a presumption of law, for such a presumption never takes flight and is always for the jury, in the presence or absence of proof. State ex rel. v. Ellison, 268 Mo. 243-44; Brooks v. Roberts, 220 S. W. 13; Linderman v. Carmin, 255 Mo. 62.

COX, P. J.—Action upon a life insurance policy. Plaintiff recovered and defendant appealed.

The petition alleged that on September 9, 1914, defendant delivered to plaintiff's husband, DeCalb Acuff, its contract and policy of life insurance dated August 31, 1914, and numbered 4718927 whereby it insured the life of said DeCalb Acuff in favor of plaintiff in the sum of $2000. That the annual premium was $53.98 and that the first year's premium was paid at or before the time of delivery of the policy. That defendant had obtained possession of said policy and refused to deliver same back to plaintiff and she was therefore unable to file the same with her petition. That DeCalb Acuff died February 22, 1916, and demand of payment of the policy had been made upon defendant and payment refused.

The amended answer contained first a general denial; second, admitted that a policy was issued to Acuff about September 9, 1914, then alleged that the policy provided that the insured might at will change the beneficiary and that on or about January 11, 1915, he did change it and made the same payable to his executors and administrators; third, that in consideration of the payment to said Acuff of $53.98 on January 12, 1915, the policy was surrendered to defendant by Acuff for cancellation; fourth, that the second annual premium of $53.98 due August 31, 1915, had not been paid and by the terms of the policy it had lapsed.

By reply plaintiff denied all new matter of the answer, denied specifically that the policy gave Acuff the right to change the beneficiary or that he had changed it. Denied that he had received from defendant the premium paid by him or had surrendered the policy for cancellation and denied that the policy had lapsed for non-payment of premium. Further replying, plaintiff alleged that the defendant undertook to deprive plaintiff of her rights under the policy and to deprive said Acuff of the policy, and to accomplish such result, falsely and fraudulently represented to Acuff that the policy

was void and unenforceable and that nothing would be paid on it in case of death. That said Acuff had been afflicted with tuberculosis at and prior to the time of applying for the insurance and desired to have the policy returned to it for cancellation which Acuff had refused to do according to plaintiff's last information concerning the matter. That she did not know what was done between defendant and Acuff in relation to a surrender of the policy or its cancellation but that she was always opposed to its surrender or cancellation or a change of beneficiary and if anything of that kind was done, it was induced by the fraud of defendant. She then tendered back all that defendant had paid, if anything, to Acuff to secure such surrender and cancellation.

Plaintiff proved the issuance and delivery of the policy to Acuff and payment of the first year's premium and the death of the insured; demand of payment before filing suit and that this suit was filed September 4, 1920. Plaintiff then introduced the first answer of defendant filed November 22, 1920. There was no material difference between the allegations of that answer and the amended answer above. The plaintiff then testified to the marriage of herself and Acuff in 1907 and his death on February 22, 1916. That at the time the policy was issued, they lived at Dearing, Missouri. Sometime thereafter, they moved to Colorado where they lived until May or June prior to his death, and then moved back to Missouri and remained in this State until he died. That a letter had been written by the defendant to her husband while they lived in Colorado which she could not produce because she could not find it, but she had read the letter and it stated to her husband that they would send a man to take up the policy and if he did not give it to him, that he would lose the policy and lose all the money he had paid. That a representative of defendant had come to see Mr. Acuff in Colorado but she did not know what had passed between them; that before she went to Colorado, the policy was kept in a blank and after she went to Colorado, it was sent to her and she delivered it to her

husband there and had never seen it since. After the death of Acuff, she found the envelope in which he had kept the policy among his papers but could not find the policy anywhere. That she was the beneficiary in the policy and that she did not know that there was any one else.

The foregoing is a fair summary of the facts shown by plaintiff to sustain her cause of action. Defendant demurred to this testimony which was overruled and it then offered testimony that may be briefly summarized as follows. The deposition of plaintiff had been taken at one time and defendant offered part of that as follows:

"Mrs. Georgia Acuff:

"Q. What had been done with the policy by your husband?

"Mr. Hawkins: I object to that because that question and answer wasn't propounded to Mrs. Acuff on the stand.

"(Objection overruled and plaintiff excepts.)

"A. Well, I can't swear to what had been done with the policy; but I do know he took the policy and said he was going to return it to the company.

"Q. Where were you living at that time? A. At Denver.

"Q. Did you give him the policy? A. Yes, sir.

"Q. Was that while this New York agent was out there? A. After he had been there.

"Q. Up to that time you had the policy then in your possession? A. It was in the Bank of Caruthersville until I sent for it; he told me to send for it.

"Q. Did you send for it? A. Yes, sir.

"Q. Was the policy sent by the bank to you? A. Yes, sir.

"Q. And you gave it to your husband to send back to the company? A. Yes; he said he was going to do that.

"Q. Why was the company wanting the policy surrendered? A. Well, they claimed Mr. Acuff had tuberculosis, and that they could get the policy back; that they

would not have to pay the policy in case he should die, and if we did not surrender it we would get nothing we had paid on the policy, or anything at all.''

Defendant then offered evidence tending to show that after the policy was issued, it had discovered that Mr. Acuff had made false representations in his application for his insurance in relation to his health and former treatment by a physician and that they became satisfied that he was afflicted with tuberculosis at the time the application was made. Upon discovery of that fact, the agent of defendant in Colorado was directed to go see Mr. Acuff and pay him back the first premium that had been paid and take up the policy. That this was done and Acuff's receipt taken for the premium returned. These facts were shown by the testimony of officers of the company and by the agent of the company who paid the money to Acuff and took up the policy. At the same time that the premium paid was returned to Acuff, he executed a paper directing that the beneficiary be changed to his executors and administrators. That by the rules of the company, in order to save storage space, all cancelled and dead policies and all papers connected therewith were destroyed after two years and only a skeleton record of what had been done in the case preserved. From this record, a copy of this policy, except in minor details, was made out and introduced at the trial. This showed the beneficiaries in the policy to be Georgia and Edward DeC. Acuff, wife and son of the insured, share and share alike (with the right on part of the insured to change the beneficiary as hereinafter provided). The policy contained a clause authorizing the insured to change the beneficiary. Also a provision requiring annual premiums to be paid in advance on August 31st of each year with thirty days grace but if not paid in that time, the policy should lapse. It was shown by the officers and clerks of defendant that the policy with direction by Acuff to change the beneficiary, and the receipt for the return premium, were received at the home office in New York and the change

of beneficiary duly endorsed on the policy January 18, 1915, and that the same, together with the application and all papers relating to the case, were kept in the files for two years, then destroyed. After the return of the policy they heard nothing more of Acuff until long after December, 1919.

Plaintiff had denied that the copy of the policy offered by defendant was a correct copy of the policy held by her husband but the particulars in which it was incorrect were not given. She and one other witness denied that the signature of DeCalb Acuff to the receipt for the return premium was her husband's signature.

At the close of all the testimony, the defendant again interposed a demurrer which was overruled.

Error is assigned in the refusal of the peremptory instruction asked at the close of plaintiff's case and at the close of the whole case and also in giving and refusing other instructions. After reviewing the instructions other than those in the nature of demurrers to the testimony, we will say that they are, in our judgment, erroneous and would necessitate a reversal and remanding of this case but we have reached the conclusion that the court erred in not sustaining the demurrers to the evidence and shall therefore not review the other instructions.

Counsel for plaintiff places himself squarely on the proposition that proof of the issuance and delivery of the policy and payment of the initial premium and the death of the insured made a prima-facie case and that all other questions were matters of defense or denials of the facts constituting a prima-facie case and therefore she was entitled to go to the jury, and the jury having found in her favor, a judgment on the verdict must stand unless reversed for some other error.

As far as we have been able to find, it has been universally held in this State and other States that in a trial on a life insurance policy where the plaintiff is in possession of the policy at the time of the trial or it is shown that the insured was in possession of it at his

death, then upon the beneficiary introducing the policy and proving the death of the insured, a prima-facie case is made for the plaintiff. [Lafferty v. Kansas City Casualty Co., — Mo. —, 229 S. W. 750; State ex rel. Bankers Life Co. v. Reynolds, 277 Mo. 14, 20, 208 S. W. 618; Foster v. Metropolitan Life Ins. Co., (St. Louis Ct. of App.) 233 S. W. 499.]

In all the cases to which our attention has been called or which we have examined, the policy was either in the possession of the beneficiary at the trial or was shown to have been in the possession of the insured at his death. In this case, there was no proof of that kind, but on the contrary the petition alleged that the policy was in the possession of the defendant and it was not produced at the trial. It was also shown by the testimony of the plaintiff that the company had written the insured while they lived in Colorado, which was prior to the expiration of the first year for which the premium had been paid, that their agent would call on him to secure a surrender of the policy. That the agent did call on him but she did not know what had passed between them at the time. In her deposition (which was competent as an admission against interest) she stated that she had delivered the policy to her husband and he said he was going to return it to the company. We think these facts make an important distinction between this case and the other cases to which we have been referred. We have been cited to no case, nor have we been able to find any, in which it has been held that a prima-facie case was made by proof of the delivery of the policy and the death of the insured when it was also admitted that the policy was then in the possession of the defendant. As we understand the reason for the rule that a prima-facie case is made by the production of the policy and proof of the death of the insured, it rests on the presumption that since the policy was secured for the benefit of the insured or some one whom he recognized as worthy of his bounty, it would be presumed that since he retained possession of the policy, he would comply with its terms and keep it alive

and by the indulgence of that presumption, the court's dispense with the necessity of proof that it was kept alive. In this case, however, it was shown that the policy was in the possession of the company and that possession is, at least inferentially, explained by plaintiff in a way to show that its possession was brought about by a voluntary surrender thereof by the insured.

Along with the possession of the policy by defendant goes another presumption and that is that the possession of defendant is lawful and right and not unlawful. In the ordinary course of events, the defendant would have no right to the possession of the policy if it were a live and subsisting policy. If, therefore, notwithstanding the possession of the defendant, the presumption is still to be indulged that the policy is alive, then it necessarily follows that defendant's possession of it is wrongful and no one can be convicted of wrong doing without proof. The presumption of innocence is the strongest presumption known to the law and when there are two conflicting presumptions, one of which is in favor of innocence and another which would be followed with a taint of guilt, the one in favor of innocence must prevail and the other must fall. This applies in civil as well as in criminal cases. [Waddingham v. Waddingham, 21 Mo. App. 609, 628-31; Klein v. Landman, 29 Mo. 259; Johnson v. St. Joseph Terminal R. Co., 203 Mo. 381, 412, 413, 101 S. W. 641; Maier v. Brock, 222 Mo. 74, 82, 120 S. W. 1167.]

In this case if we indulge the presumption that the policy sued on was a live policy, although in the possession of defendant, then that presumption carries with it the conclusion that the possession of defendant was wrongful, a conclusion that cannot be reached on a bare presumption without proof tending to show it to be wrongful. In this situation, the presumption which obtains in all cases that possession of property of any kind is lawful until the contrary be shown, neutralizes or refutes the presumption that the policy was alive and the property of plaintiff at the time of the trial and there-

fore her proof failed to make a prima-facie case and the demurrer to her testimony should have been sustained.

A very interesting question is presented in briefs of counsel to the effect that although we indulge the presumption that the policy was alive in this case, yet that is only a presumption and when defendant produced testimony that was apparently creditable which would show that the policy was not alive, then the presumption took flight and the burden shifted back to plaintiff to show, independent of the presumption, that the policy was alive and since this was not done, the demurrer of defendant at the close of the whole case should have been sustained. We do not deem it necessary to pass upon that question in this case but in passing, will call attention to the case of Downs v. Horton, decided by this court, 209 S. W. 595, and the same case by the Supreme Court, 230 S. W. 103, which seems to sustain the contention of appellant on that question. [See, also, Lafferty v. Kansas City Casualty Co., supra.]

Judgment reversed. *Farrington, J.*, and *Bradley, J.*, concur.