FRANCES B. McCORMICK, Administratrix of the Estate of LOUIS D. McCORMICK, Deceased, Respondent, v. THE TRAVELERS INSURANCE COMPANY, Appellant.*

In the Kansas City Court of Appeals, December 31, 1923.

1. **INSURANCE: Prima-facie Case: Facts Ordinarily Constituting Prima-facie Case in Suit upon Policy by Administratrix Stated.** In a suit upon a life insurance policy, ordinarily a prima-facie case is made by showing the issuance and delivery of policy, death of insured, appointment of plaintiff as administratrix of insured's estate, waiver of proofs of death by denial of liability and the introduction of policy in evidence.

2. ———: **Where Policy was in Possession of Insurer, Showing of Issuance and Delivery of Policy and Death of Insured Did Not Make Out a Prima-facie Case.** Where policy of insurance was in possession of insurer, plaintiff did not make out a prima-facie case merely by showing the issuance and delivery of policy and death of the insured.

3. ———: **Evidence Held Insufficient to Show Surrender of Old Policy was Conditioned Upon Issuance of a New Policy.** Evidence *held*

McCormick v. The Travelers Ins. Co.

insufficient to show that surrender of insurance policy was conditioned upon issuance of new policy.

4. ———: Cancellation: Burden of Proof: Burden of Proof upon Plaintiff to Show Surrender and Cancellation of Policy Sued on Was Conditional. In an action upon an insurance policy, where it was contended that a surrender of it was conditioned upon the issuance of a new policy, it devolved upon plaintiff to show that the surrender and cancellation of the old policy was conditional.

5. ———: Mere Intention of Insured in Surrender of Insurance Policy to Make Same Conditional upon Issuance of New Policy was not Effective unless Such was Agreement Between Him and Insurer. Where a life policy was surrendered by insured, mere intention on his part to make such surrender conditional upon the issuance of a new policy, was not effective unless it was expressed in some way so that it could be said that such was the understanding and agreement between him and insurer.

6. EVIDENCE: Self-serving Statements: Self-serving Statements Held not Admissible in Evidence. In an action upon an insurance policy held that self-serving statements contained in insurer's inter-office communications, were not admissible in evidence.

7. ———: ———: Facts in Reference to Surrender of Policy Held Admissible in Evidence. In a suit upon a life policy the fact that the old policy was in the possession of defendant's cashier, and was mailed by him to its home office and received in a letter from him and that a surrender deed was returned for execution by insured and that the same was transmitted duly executed to insurer, who sent the surrender value called for therein, and the dates on which said acts were done, were admissible and not in violation of the rule as to self-serving statements.

8. INSURANCE: Cancellation: Cancellation Complete upon Receipt of Policy with Request for Cancellation, Even Though Insured Did not Receive Surrender Value Before He Died. Where life policy provided for cancellation upon request of insured, cancellation was complete upon receipt of the policy with the request for cancellation, even though the surrender value did not reach insured before he left for place where he later died.

ON MOTION FOR REHEARING AND TO TRANSFER

9. EVIDENCE: Testimony That Certain Document was Sent or Received in a Letter of a Certain Date Held Competent Evidence. Testimony of officers that a certain document was sent or received in a letter of such and such a date held competent evidence.

10. **APPEAL AND ERROR:** On Appeal Where Verdict is for Plaintiff, All Evidence not Opposed to Reason or Common Experience Must be Accepted as True. Where verdict is in plaintiff's favor, all evidence not diametrically opposed to reason or the common experience of men, must be accepted as true.

*Headnote 1. Life Insurance, 25 Cyc, p. 925; 2. Life Insurance, 25 Cyc, p. 925; 3. Life Insurance, 25 Cyc, p. 943; 4. Life Insurance, 25 Cyc, p. 927 (1926 Anno); 5. Life Insurance, 25 Cyc, p. 785 (1926 Anno); 6. Evidence, 22 C. J., Section 193; 7. Evidence, 22 C. J., Section 193; Life Insurance, 25 Cyc, p. 931; 8. Life Insurance, 25 Cyc, p. 785; 9. Evidence, 22 C. J., Section 1221; 10. Appeal & Error, 4 C. J., Section 2836.

Appeal from Circuit Court of Jackson County.—*Hon. Thad B. Landon*, Judge.

REVERSED.

*L. C. Harper* and *McVey & Freet* for respondent.

*O. C. Mosman, Clay County Rogers* and *Paul A. Buzard* for appellant.

TRIMBLE, P. J.—Action on an insurance policy of $5000 issued by defendant upon the life of Louis D. McCormick, dated February 1, 1916, and afterwards made payable, in the event of his death, to his estate. He died March 11, 1919, and his widow, as administratrix, brought this suit on March 23, 1921. From a verdict and judgment in plaintiff's favor for $5503.12, the amount of the policy with interest, defendant has appealed.

The petition is in the usual form except that neither the policy nor a copy thereof is attached, the petition alleging that "said insurance policy is now in the possession of defendant and that defendant has full knowledge thereof, and this plaintiff is by reason thereof unable to set out a copy of said policy."

Defendant's duly verified answer, after a general denial, specifically denied that the policy was in force on March 11, 1919, the date of McCormick's death, and then set up that on or about March 3, 1919, McCormick surrendered said policy for its cash surrender value, to-wit, $180, which defendant paid to him, and he executed a

surrender deed thereto, a duly verified copy of which was attached to the answer.

In reply, plaintiff, in addition to a general denial, alleged that prior to the date of the execution of the alleged surrender deed, defendant negotiated an arrangement with McCormick to change the form of his insurance, wherein policy No. 345913 (the policy sued on), was to be cancelled and a new policy of $5000, written at a smaller premium rate, was to be substituted for the other policy, all as one continuous and single transaction; that on March 3, 1919, McCormick signed and delivered to defendant's agent the surrender deed in accordance with said arrangement, and also signed and delivered an application for new insurance and was physically examined, all as a part of the same arrangement; that it was the agreement and a part of the said arrangement that policy No. 345913 should not be cancelled until said new policy took effect, and that the cancellation and surrender of the old policy was conditioned on the acceptance by defendant of the new application and the issuance of the new policy.

Said reply further alleged that the consideration of $180 recited in said surrender deed was not paid to McCormick and that he died before there was a payment or tender of said sum to him; and that said surrender deed was without force or effect; that defendant issued a draft for the $180 payable to McCormick and forwarded the same by mail from the home office to defendant's Kansas City office, and McCormick's name was evidenced thereon by defendant's agent without McCormick's knowledge or authority, and defendant has denied liability on the new insurance applied for by McCormick, and is now estopped from claiming that policy No. 345913 was cancelled or surrendered, and from claiming that said policy is not in force.

In a rejoinder, defendant denied that it entered into any negotiations of an arrangement with McCormick for a change in the form of his insurance, but alleged that the transaction whereby policy No. 345913 was cancelled

was a separate and distince transaction, in no wise dependent upon or in consideration of the writing of any new policy by defendant; that McCormick did, on March 3, 1919, file an application for a policy of insurance and was examined by a medical examiner, but no policy was ever issued thereon, McCormick having died before said application and medical examination were ever passed upon by defendant; that defendant received from McCormick along with said new application a check for $34.85 which defendant duly tendered to plaintiff but she refused to accept same and it is now tendered and paid into court for her use and benefit.

The trial proceeded in this wise: Plaintiff offered in evidence the policy sued on, and then, after a stipulation as to plaintiff being administratrix and that McCormick died at Excelsior Springs at 2 a. m. of March 11, 1919, plaintiff "for the purpose of proving denial of liability and consequent waiver of formal proof of death," offered in evidence the "material part" of a letter from defendant's Kansas City cashier, addressed to plaintiff personally and dated March 18, 1919, said part so offered stating that the writer is informed that addressee had requested blank proofs of death for Policy No. 345913, but that said policy "was surrendered for cash on March 6, 1919, the surrender deed being signed by your husband on or about March 1st, and the Company's check for $180, being the full amount of such cash surrender value, having been accepted by your husband prior to his death." . . . "I am holding, pending the appointment of an administrator of Mr. McCormick's estate, the sum of $34.85, which Mr. McCormick paid at the time he made application for new insurance on March 1st." Plaintiff thereupon rested and defendant demurred to the evidence, which the court overruled.

Defendant thereupon introduced evidence showing that on March 10, 1919, McCormick had a balance of $6.04 to his credit in his account in the Liberty Trust Company of Kansas City and that on that day defendant's draft for $180 dated Hartford, Conn., March 6,

1919, payable to McCormick and endorsed "F. D. Mc-Cormick by F. D. M. for deposit with Liberty Trust Co., Kansas City, Mo.," was presented to said bank and the amount of said check was placed to McCormick's credit in his regular bank account. Other evidence shows that this check arrived in Kansas City on March 10, 1919.

Defendant further introduced evidence showing that the surrender deed, attached to the answer, was signed and acknowledged by McCormick on March 3, 1919. Said deed recited that it was executed "in consideration of one hundred eighty dollars to me in hand paid, the receipt of which I do hereby acknowledge as to my full satisfaction," and for which insured conveyed and set over to defendant all right, title, claim, interest and benefit he had, or may have, in and to Policy No. 345913.

It was then stipulated and agreed between counsel that said policy provided for a surrender value of $180 at the end of three years, and the policy shows this on its face.

In rebuttal, plaintiff took the stand and testified that McCormick went from his home in Kansas City to Excelsior Springs on March 8, 1919, and that from that time she was with him continuously at Excelsior Springs until an hour before he was found on the 10th of March, 1919, in his room, unconscious from a pistol shot wound from which he died on the morning of March 11, 1919, without ever having regained consciousness. It was further shown in evidence that McCormick did not endorse the $180 draft deposited to his account but that this endorsement and deposit were made by F. D. Masden, defendant's soliciting agent in Kansas City.

In a suit by plaintiff individually against defendant, she had taken, in Hartford, Connecticut, the deposition of Lewis M. Robotham, defendant's Assistant Secretary in charge of its Life Department, and in this deposition had called for and examined him about certain letters and papers which were attached to said deposition as exhibits. In the trial of the case at bar, plaintiff, in re-

buttal, offered this deposition in evidence "by agreement of parties," and read therefrom a portion of the direct examination of Robotham to the effect, among other things, that he had in his possession the application for the new policy, and that it was received by defendant in Hartford on March 7, 1919, from the Kansas City office; said application was attached to said deposition as Exhibit A, but on being introduced by plaintiff became Exhibit 4 at the trial. Said application shows that it was signed by McCormick and taken by Masden on March 1, 1919. Beneath the signature of McCormick was a blank statement for applicant's signature in which he could state the amount of cash paid and to whom paid and that he held the payee's receipt therefor. This, however, was wholly in blank and unsigned by applicant. Below this, however, and with a perforated line between, was a binding receipt dated March 3, 1919, signed byMasden, acknowledging that he had received from McCormick the sum of $34.85, "the sum declared by applicant in his application to have been paid in cash" on certain named conditions. The Company reserved the right to disapprove of the application, and it was provided that if the policy applied for should not be issued within sixty days the premium would be surrendered to applicant on the Company's receiving the binding receipt. The application was for $5000 of what is denominated "term insurance" which called for the payment of a total annual premium of much less than that called for in the old policy. There was no reference, however, in any manner whatever to the old policy. It was also shown that on the day the application was taken, March 1, 1919, McCormick gave his check dated March 3, 1919, for $34.85 to pay the first portion of the premium on the new policy.

Plaintiff also read from Robotham's deposition showing that McCormick had undergone a medical examination in connection with the new application and that the report of a medical examiner had been made, but before the application and medical report had passed

through the regular routine of such matters in the home office, a telegram had been received announcing the death of applicant and thereupon all consideration of the application had ceased and no policy was issued thereon.

Plaintiff further read from Robotham's deposition to the effect that on or about the time of the making of the application for the new policy, McCormick was negotiating for the surrender of the old policy. In his deposition Robotham at first said the papers in relation to the surrender of the old policy were not received with the application for the new one, the two sets of papers being handled by different mails and going to different departments, but later he said it "would be possible" for the two papers to come together in one envelope and then be separated after they reached the home office; that he was not able to state, and there was no one connected with the office who could testify with certainty, whether they were received in the same envelope or not, but that the "probability" is that they came under separate covers.

Plaintiff also established by said deposition of Robotham that, at the time defendant received the application, a letter dated March 4, 1919, from Inlow, defendant's Kansas City Cashier, was received by defendant's Secretary Scott at Hartford, and said letter was read in evidence as follows:

"In connection with the attached application, we beg to advise that Agent Masden received a check from this applicant which is dated ahead and represents the net due on the first semi-annual premium on this insurance."

Plaintiff then read said deposition in evidence down to and including an inquiry as to defendant's receipt of a letter transmitting policy No. 345913 and the surrender deed, and had read a portion of the answer to said question when plaintiff stopped the further reading of said deposition, and withdrew the remainder of said deposition, saying that defendant's inter-office communications would not be read. Counsel for defendant object-

ed, saying that plaintiff ought not, after reading a deposition taken by her in which she had called for a letter, inquired about its receipt and had read a part of the answer in regard to it, to then leave out the letter itself. Plaintiff's counsel replied that he didn't read any "material part" of it; and in an argument over the matter plaintiff's counsel said: "That is merely their inter-office correspondence. Our arrangement (between counsel) was we could offer this deposition, either one of us, or anything we wanted to, any of the records attached to it. If you (addressing defendant's counsel) want to offer that part of it why it is all right with me." The court then ruled that when defendant's turn came, it would be allowed to read the portions of the depositions and the exhibits which plaintiff had omitted.

In further rebuttal, plaintiff then called as a witness defendant's Kansas City Cashier, Inlow, and proved by him that Masden was defendant's soliciting agent at Kansas City, that the signature of the agent taking the application for the new policy was Masden's and that it was also his signature to the binding receipt; that the name of McCormick endorsed on the back of the $180 draft was in Masden's handwriting; that McCormick's check for $34.85 dated March 3, 1919, payable to defendant's order, went through his office and was deposited to defendant's credit in the First National Bank at Kansas City. (This check was charged against McCormick's account in the Liberty Trust Co. on March 11, 1919.)

As a part of Inlow's cross-examination, defendant, over plaintiff's objection, introduced a number of letters between Inlow and the Home Office. These letters were attached as Exhibits to the deposition of Robotham hereinbefore mentioned. Plaintiff objected to these letters on the ground that they were self-serving inter-office communications of defendant.

One of these letters, Exhibit F., dated February 18, 1919, from Inlow to the Secretary of defendant's Life Department at Hartford, after stating that the subject

of the letter was "Policy No. 345913, Louis D. McCormick," said:

"I am attaching hereto the above numbered contract and last premium receipt as the insured wishes to surrender this policy."

The court, at this time, admitted the above portion of said letter, but excluded the following portion:

"The insured would like to have this money by March 1st and if it is possible will you send us the check with the surrender deeds with the understanding that the deeds are to be properly executed before the check is released. If this cannot be arranged for, send the surrender deeds for completion.

Thanking you in advance for your attention to this matter, I remain,

"Yours very truly,
"H. L. INLOW, Cashier."

Inlow said he did not personally write this letter but that it was done under his direction; that the word "contract" in the letter referred to the policy; that he knew nothing about what took place between McCormick and Masden, or of any request made by McCormick for the return of the money, the $180, or of any agreement between McCormick and Masden at the time the application was made or the surrender deed was executed.

Another of the above-mentioned letters, thus introduced by defendant, in connection with the cross-examination of Inlow, was one, Exhibit H., dated March 3, 1919, from Inlow to defendant's Superintendent of Policy Loan Division, in which Policy No. 345913 is referred to as the subject-matter and the writer says:

"Supplementing my letter of the 18 inst., with which I forwarded above contract and last premium receipt, you will find attached hereto duly signed and executed Surrender Deed, calling for $180."

The court, at that time, admitted the foregoing portion of said letter, but excluded the following portion:

"It is very important to the Insured that he receive check for this amount not later than Saturday

morning, the 8th inst., and if you will arrange that check go forward in time to reach this office by that date, we will appreciate it very much.''

This letter was received at Hartford on March 6, 1919.

Another of the letters, which Inlow, on cross-examination, stated he received on March 8, 1919, is one from the Superintendent of the Policy Loan Division, dated March 4, 1919, in which, after referring to Policy No. 345913 as the subject-matter, the writer says:

''According to our records Surrender Deed on the above case was forwarded to your office under date of February 21st for execution by the above insured. Since we are still holding the policy in our files we would appreciate an early return of this instrument in order that our pending files may be cleared of the case.''

Another of the letters which Inlow, on cross-examination, said he received from the Superintendent of Policy Loan Division, dated March 6, 1919 (the same day Inlow's letter of March 3, 1919, inclosing the executed surrender deed, was received in Hartford), set forth the state of account ''in adjustment of surrender of above policy'' showing that McCormick was entitled to a credit of $180 on surrender of the policy, and he was debited with that amount on account of ''enclosure,'' which was a ''check No. 8372 on Metropolitan Bank of N. Y. for net proceeds.'' (This was the draft for $180 which Masden deposited to McCormick's credit after endorsing McCormick's name thereon.)

Inlow testified that he was not personally acquainted with McCormick, had had no conversation with him in reference to surrendering his policy, and had no personal knowledge of McCormick's request for the cancellation of his policy or the payment of the $180. These transactions were evidently had solely between McCormick and Masden. Neither side called Masden to testify in the case, though it seems he was present in court at the trial.

Defendant's agency contract with Masden was introduced in evidence by defendant and it recites that Masden has no authority to make or change any contract.

Plaintiff testified that she did not recall whether, after McCormick's death, she drew the balance of his account from the bank, but that she "must have" done so. She also proved that, prior to bringing her suit, she had tendered to defendant the $180 surrender value of the policy, and all interest thereon.

Before the closing of plaintiff's rebuttal, defendant offered in evidence the parts of Robotham's deposition which plaintiff had declined to read, together with the exhibits therein referred to, and the court, in accordance with the ruling it had made that defendant would be allowed to read them when its turn came, admitted in evidence, over plaintiff's objection, the whole of the letter, Exhibit F., heretofore set out, dated February 18, 1919, from Inlow to the Secretary of the defendant's Life Department. In this connection the court also admitted, over plaintiff's objection, the letter (Exhibit G.), dated March 4, 1919, from Inlow to defendant's Secretary Scott, being the same letter heretofore set out and introduced by plaintiff.

In the portion of Robotham's deposition omitted by plaintiff and read in this connection by defendant, Robotham testified that the surrender deed was forwarded to the Kansas City office under date of February 21, 1919, for execution by McCormick, and that it was received back by him, executed, in the letter from Cashier Inlow, dated March 3, 1919. Thereupon the whole of said letter, heretofore shown as Exhibit H., was admitted and read in evidence over plaintiff's objection. In the portion of Robotham's deposition, thus read by defendant Robotham testified that the letter forwarding the surrender deed was not dated the same day as the letter forwarding the application for the new policy but that the former was dated March 3, while the latter was dated March 4, 1919. Robotham also said that there was no

other or further correspondence between the Home office and the Kansas City office or with McCormick with respect to the application prior to the receipt of the telegram announcing McCormick's death. He, on request, attached a photographic copy of the surrendered policy, No. 345913, to his deposition.

At the close of plaintiff's case in rebuttal, defendant again demurred to the evidence but was overruled. Thereupon defendant introduced evidence showing a tender of the $34.85 to plaintiff which was refused, also that a deposit of said amount had been made with the clerk of the court for plaintiff.

At the conclusion of all the evidence, defendant again demurred but was overruled.

Plaintiff submitted her case upon instruction No. 1, which told the jury that if they believed from the evidence defendant issued its policy to Louis D. McCormick, dated February 1, 1916, and that on the 11th of March, 1919, "while said policy was in force and effect, if you so find," said McCormick died, and that defendant thereafter denied liability on said policy, "and if you further find that said policy had not been surrendered but was in force and effect at the time of the death of said Louis D. McCormick," then verdict should be for plaintiff in the sum of $5000 less $180, and interest thereon at six per cent from March 10, 1919, and that the jury might, in addition, allow interest at six per cent. from date of denial of liability, "if you so find."

Said instruction then went on and told the jury that "whether or not the policy sued on was surrendered" to defendant "was to be determined by the intent of the parties from all of the evidence in the case, and in considering the intent of the parties, you are instructed that you may take into account all the surrounding facts and circumstances in evidence, and if you find that at the same time that the surrender deed in evidence was executed that Louis Darrell McCormick applied to defendant company for a new policy of insurance in like amount as the old policy, and if consid-

ering all the facts and circumstances in evidence you find that it was the intent of the parties that the policy sued on was not to be surrendered and cancelled until and unless the new policy applied for, if you so find, had been issued by defendant company, and that such new policy was not issued by the defendant company, then your verdict will be for the plaintiff as hereinbefore set forth.''

The question of whether defendant's demurrer to the evidence should have been sustained is vitally affected by the question whether plaintiff made a prima-facie case, as she contends, by showing the issuance and delivery of the policy, the death of insured, the appointment of plaintiff as administratrix of insured's estate, the waiver of proofs of death by denial of liability, and the introduction of the policy in evidence. Ordinarily, a prima-facie case would thus be made. But, in the case at bar, plaintiff was not in possession of the policy. On the contrary, the petition alleges that it is in defendant's possession, and the evidence also shows this, since in Robotham's deposition he was asked to, and did, attach a photographic copy of the policy. The record, it is true, recites that plaintiff introduced the policy, but it is manifest from the entire record that the policy was there merely for the purpose of being introduced in evidence pursuant to an agreement that all papers involved in the controversy were produced at the trial for the use of whichever side desired to introduce them. As the policy was not in plaintiff's but was in defendant's possession, the plaintiff did not make a prima-facie case merely by showing the issuance and delivery of the policy and the death of the insured. [Acuff v. New York Life Ins. Co., 239 S. W. 551, 553.]

Moreover, plaintiff's pleadings and the instruction on which she submitted her case, all show that she bottoms it upon the theory that possession of the policy had been surrendered to the defendant, but that it was a *conditional* surrender, dependent upon defendant's issuance of a new policy and the condition not having been

performed, the surrender did not take effect. Consequently, she says, the old policy is still in force. But there is no evidence to show that the surrender of the old policy was conditioned upon the issuance of the law. Nor is there any evidence to show that the change should be effected without any break in the continuity of McCormick's life insurance. So far as the papers themselves show, they are directly to the contrary. The surrender deed is absolute on its face and recites that it is in consideration of $180 which is acknowledged to be in "full satisfaction" thereof, and it is conceded that this amount was the true surrender value thereof. Unquestionably, the surrender deed was executed and delivered. It is true that at the time the surrender deed was executed, an application for a new policy was made and a medical examination was had and a report thereon made, but the Company expressly and unqualifiedly reserved the right to disapprove of the application, to refuse the insurance and to return the new premium if the policy was not issued within sixty days. In the meantime what would became of the old policy? By its terms, it required a semiannual premium of $81.55 on the 1st of February each year to keep it in force, with thirty-three days of grace in which to pay that sum, and if not paid within that time the policy was at an end except for its surrender value. There is no evidence that any premium for the fourth year was paid; and manifestly none was paid, since the surrender value of the policy was $180 and this was its surrender value at the end of the three years, namely, on February 16, 1919. The days of grace for the payment of the premium for the fourth year of the old policy would expire on March 4, 1919, so that the old policy did not continue in force, except as to its surrender value, beyond that date, which was before the application for the new policy could even be received in Hartford, much less be acted upon by defendant, and McCormick's death occurred seven days thereafter.

In lieu of affirmative or express evidence to show that the surrender of the old policy was conditioned upon the issuance of the new and that there was to be no *interregnum* between the two, plaintiff relies upon inferences which she says the jury have a right to draw, but there is nothing outside of what has been hereinbefore stated, from which to draw them. The only basis upon which plaintiff's contention can be said to rest inheres in the circumstance that at the time the surrender deed to the old policy was executed an application was made for the new policy, and this ground is coupled by plaintiff with another inference, without other basic support, that, of course, McCormick intended his insurance to have no break of continuity. This last-mentioned inference, and also the others, are stated in plaintiff's brief as follows:

". . . no one in his ordinary senses would give up a policy for $5000 in full force and effect, at the same time taking out an application for new insurance in the same company for a like sum for a lower rate of premium, without intending to have continuous insurance and intending that the one policy was to be a substitute for and in lieu of the other; that the one policy was not to be terminated until the company took action upon the new application and issued him a new policy."

A mere intention to that effect in the mind of McCormick would not amount to anything unless it was expressed in some way so that it could be said that such was the understanding and agreement between him and defendant; and if there was such an agreement or understanding, it was incumbent upon plaintiff to introduce some evidence in support thereof. Under the circumstances of this case, it developed upon plaintiff to show that the surrender and cancellation of the old policy was conditional only. [Acuff v. New York Life Ins. Co., 239 S. W. 551; Downs v. Horton, 287 Mo. 414, 432.] In all the cases cited by plaintiff in support of her contention there was ample evidence to show that what appeared

215 Mo. App.—18.

to be an absolute cancellation was in reality a conditional cancellation only, and the condition never having been performed, of course the original policy stood as it had theretofore existed, in full force and effect.

We may very well agree with plaintiff that any self-serving *statements* contained in defendant's inter-office communications are not admissible in evidence; but it is not necessary to rely upon these. The *fact* that the old policy was in the possession of defendant's Kansas City cashier, and was mailed by him to Hartford on February 18, 1919, was admissible as well as the fact, testified to by Robotham, that it was received in such letter and that a surrender deed was, on February 21, 1919, sent to Kansas City for execution by McCormick; and the further facts that the surrender deed, duly executed, was transmitted to defendant on March 3, 1919, and on March 6, 1919, defendant promptly sent the surrender value called for therein. The statements in these various letters as to what the insured wanted, etc., need not be considered, but what was *done,* and the *dates* on which they were done, are admissible. And in none of these things is there anything to help out or support the inferences plaintiff seeks to draw. The old policy was sent to the company as early as February 18, and the only inference arising from this fact is that it was surrendered for cancellation. The sending of the surrender deed for execution, the return thereof duly executed and the prompt remittance of the surrender value thereof are in accord therewith, and this is strictly borne out by the terms of the surrender deed itself. The terms of the application for the new policy disclose no connection whatever with the old policy but clearly is of itself independent of everything. The premium for the new policy was not deducted from the surrender value of the old, but each of these were attended to as separate and distinct matter, the applicant giving his check for the new premium to be accepted by defendant if the new insurance was issued, but if not the premium was to be re-

turned. An inference favorable to plaintiff is attempted to be drawn from the fact that the check for the new premium, dated March 3, 1919, was not cashed until the day after the $180 was deposited. But whether this check was not cashed until then may well have been because McCormick's account was not sufficient to meet said premium check until the $180 was deposited and this seems as likely since McCormick's account prior to the $180 deposit was only $6.04. At any rate, a conclusion either way on this proposition would be a mere guess.

The surrender deed was sent to the superintendent of the policy loan division on March 3, 1919, and the application for the new policy was mailed the next day to the Secretary of the Life Department. These two departments are separate and distinct.

It is urged that the old policy was still in force because the $180 surrender value was not received by McCormick. The surrender deed is merely a release of defendant from liability and a surrender of the policy for its surrender value. The policy provided for the cancellation in case the insured requested it. Under these circumstances, the cancellation was complete upon receipt of the policy with the request for cancellation, even though the surrender value did not reach insured before he left for Excelsior Springs. [Parsons v. Northwestern, etc., Ins. Co., 110 N. W. 907; Farmers, etc., Ins. Co. v. Phenix Ins. Co., 90 N. W. 1000; Roberts Mfg. Co. v. Royal Exchange, etc., Ins. Co., 76 S. E. 865, 868-9; Colonial Assurance Co. v. National Fire Assurance Co., 110 Ill. App. 471; Davidson v. German Ins. Co., 65 Alt. 996; Gately-Haire Co. v. Niagara Falls Ins. Co., 116 N. E. 1015; Mangrum v. Law Union, etc., Ins. Co., 157 Pac. 239; Elliott on Ins., sec. 300.]

We have carefully gone through the record in this case and have set forth everything upon which, in any view, plaintiff can be said to rely in support of a cause of action based upon the policy sued on. There is, in our view, nothing upon which can be based a reasonable in-

ference that the cancellation and surrender of the old policy was conditioned or dependent upon the issuance of a new policy. The judgment is, therefore, reversed. All concur.

## ON MOTIONS FOR REHEARING AND TO
## TRANSFER.

TRIMBLE, P. J.—We are at a loss to understand how the foregoing opinion can be so misunderstood as that it should be construed as being based on the inter-office communications between the defendant's home office and its Kansas City office, as evidence of the matters stated therein. It is not. The statements in those letters are not treated as evidence of their contents. But the *testimony* of the officers that a certain document was sent or received in a letter of such and such a date is evidence.

Neither does the opinion base its denial of recovery upon the acceptance of the evidence of defendant's witnesses in contradiction of any evidence offered by plaintiff. We are well aware of the rule that where the verdict is in plaintiff's favor all of her evidence not diametrically opposed to reason or the common experience of men, must be accepted as true. But in this case plaintiff sues upon a certain theory, offers no evidence in support of that theory and asks the jury to give her a verdict based on *inferences* when there is no evidence anywhere furnishing a basis support for such inferences, not even in anything defendant or its officers said or did; and certainly plaintiff ought not to object if defendant's evidence and correspondence is looked into to find, if possible, some evidence which might tend to support plaintiff's theory. When this is done and nothing is found therein to give support or countenance to plaintiff's claim, this is not basing the conclusion reached by the opinion upon an acceptance of defendant's testimony in preference to plaintiff's evidence.

The fallacy in plaintiff's position is in assuming that she made a prima-facie case. She did not. Not only does she solemnly state in her petition that the policy is not in her possession and is in defendant's possesion, but, as stated in the opinion, the whole theory of her case, as shown by her pleadings, instructions and evidence, is that "possession of the policy had been surrendered to defendant, but that it was a *conditional* surrender, dependent upon defendant's issuance of a new policy, and the condition not having been performed, the surrender did not take effect. Consequently, she says, the old policy is still in force." But there is no evidence to show that the surrender of the old policy was conditioned upon the issuance of the new.

The motions for rehearing and to transfer are overruled. All concur.