Tamy Lynn TAYLOR, Appellant,

v.

Tony BONILLA, et al., Appellees.

No. 3–89–191–CV.

Court of Appeals of Texas,
Austin.

Nov. 21, 1990.

Rehearing Overruled Dec. 19, 1990.

John T. Anderson, Graves, Dougherty, Hearon & Moody, Austin, for Tamy Lynn Taylor.

Jan Soifer, Rubinstein & Perry, Austin, for Tony Bonilla.

John H. Spurgin, II, McGinnis, Lochridge & Kilgore, Austin, for New York Life Ins. Co.

Before SHANNON, C.J., and ABOUSSIE and JONES, JJ.

### ON MOTION FOR REHEARING

JONES, Justice.

The opinion and judgment issued by this Court on October 17, 1990, are withdrawn, and the following opinion is substituted in place of the earlier one.

Tamy Lynn Taylor, plaintiff below, appeals from a judgment that she take nothing from defendants, Tony Bonilla and New York Life Insurance Company.[1] Mrs. Taylor's claims arose out of New York Life's denial of coverage under both a term

---

1. For clarity, we will refer to the parties either by their names or by their party designations in the trial court.

life insurance policy ("the term policy") and a whole life insurance policy ("the whole life policy"), one or the other of which she contends insured the life of her husband, Scott Taylor, at the time of his death. Mrs. Taylor sought damages for breach of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, violations of the Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. §§ 17.41–17.61 (1987 and Supp.1990) (DTPA), and the Texas Insurance Code, and negligence. The trial court granted a partial summary judgment for New York Life as to the term policy contract claim and a directed verdict for New York Life as to the whole life policy contract claim. The jury returned a verdict favorable to both defendants on the remaining claims, and the trial court rendered judgment in accordance therewith. We will affirm the trial court's judgment in part and reverse it in part.

Pleading in the alternative, Mrs. Taylor contended that one policy or the other was in force at the time of Mr. Taylor's death. Although both parties admitted Mr. Taylor had taken steps to replace his whole life policy with a term life policy, defendants asserted that the term policy was not yet in force at the time of his death because no consideration had been given for it. Defendants also denied the effectiveness of the whole life policy, arguing that it had been surrendered before Taylor's death. Consequently, New York Life denied liability under both policies. Mrs. Taylor alleged that Bonilla, an agent for New York Life, was guilty of negligence, breaches of fiduciary and good-faith duties, and violations of the DTPA and the Insurance Code. She sought recovery from New York Life under the term policy, or in the alternative, under the whole life policy. Further, she alleged that the "cursory investigation" New York Life had conducted before denying her claims constituted a breach of the duty of good faith and fair dealing.

Just prior to trial, the district court granted New York Life's motion for partial summary judgment on the term policy contract claim. The court ruled that New York Life had shown, as a matter of law, that Mr. Taylor had given no consideration

for the policy. After the close of the evidence, the court granted New York Life's motion for directed verdict as to the whole life policy contract claim. The extra-contractual claims were submitted to the jury, which refused to find that Bonilla or New York Life had committed negligent acts, violated the DTPA or Insurance Code, or breached any fiduciary or good-faith-and-fair-dealing duty. The court then rendered a take-nothing judgment, from which Mrs. Taylor appeals.

On appeal, Mrs. Taylor complains of the granting of the partial summary judgment and directed verdict on the contractual claims, asserting that genuine issues of material fact existed. In addition, she challenges each of the jury's refusals to find any extra-contractual liability as being against the great weight and preponderance of the evidence.

## THE FACTS

In December 1985, Scott Taylor met with Bonilla to discuss surrendering Taylor's whole life insurance policy and obtaining its accumulated cash surrender value. Although the parties disagree whether Taylor intended to replace the policy when he first contacted Bonilla, they do not dispute that during the meeting the two men discussed Taylor's obtaining a $100,000 term life policy. This policy was to "replace" the whole life policy being surrendered. During the same meeting, Bonilla completed and Taylor signed a number of forms drafted by New York Life. These included an application for the term policy and a form requesting surrender of the whole life policy and return of its accumulated cash value. On the term policy application, Bonilla noted that the whole life policy was to terminate when the new term policy was issued. In addition, Taylor signed a sheet entitled "Important Notice Regarding Replacement," which included the following warning:

If, after studying the information made available to you, you do decide to replace the existing life insurance with our company with a new life insurance policy issued by our company, you are

urged not to take action to terminate or alter your existing life insurance coverage until after you have been issued the new policy, examined it and have found it acceptable to you. If you should terminate or otherwise materially alter your existing coverage and fail to qualify for the life insurance for which you have applied, you may find yourself unable to purchase other life insurance or able to purchase it only at substantially higher rates.

Taylor never gave Bonilla a check for the first premium on the term policy. He also failed to complete a policy loan form or a dividend withdrawal form, either of which would have allowed him to use the accumulated cash value of the whole life policy to pay the first premium on the term policy. Approximately two weeks before his death, Taylor received a New York Life check in "full settlement of all claims" under the whole life policy. Taylor negotiated the check. During the same two week period, Bonilla received the newly issued term policy. Before Bonilla could deliver the policy to Taylor, however, Taylor was killed in a car wreck.

Mrs. Taylor called Bonilla to inform him of her husband's death and to ask about his coverage with New York Life. Bonilla told her that the new term policy was not yet in force because no premium had been paid on it. Mrs. Taylor revealed that her husband had, before his death, received a check from New York Life and cashed it. Bonilla then told her he would determine the status of the whole life policy and let her know what he found out. Later, Bonilla called to tell her that, because Taylor had accepted payment of the cash value of the policy by negotiating New York Life's check, the surrender of the whole life policy was complete before the accident. Consequently, Bonilla concluded that Taylor had died without any coverage by New York Life.

## THE PARTIAL SUMMARY JUDGMENT

■ Before trial began, New York Life moved for summary judgment on the term policy contract claim, arguing that it had shown conclusively that no consideration had been given for the policy.[2] Mrs. Taylor admitted that her husband had not given Bonilla a premium for the policy. She contended, however, that the two men had intended the surrender of the whole life policy to provide consideration for the term policy. Agreeing with New York Life, the trial court granted a take-nothing partial summary judgment as to the term policy contract claim.

■ This issue is one of first impression in Texas. Counsel have been unable to point us to, and we have not found, any Texas case expressly dealing with the question of whether the surrender of one policy may serve as consideration for the issuance of a new policy. At least one noted authority states that a surrender of one policy may, indeed, serve as consideration for another. *See* J. Appleman & J. Appleman, *Insurance Law and Practice* § 1759 (1967). Fundamental contract principles support this proposition as well. It is well established that, where no other consideration is shown, mutual obligations by parties to an agreement will furnish sufficient consideration to constitute a binding agreement. *Texas Gas Utilities Co. v. Barrett,* 460 S.W.2d 409, 412 (Tex.1970). In addition, the general rule is that a promisee's surrender of valid contractual rights, which

---

**2.** New York Life also argues on appeal that the policy had not been *delivered* to Taylor in his lifetime, and that Taylor had, therefore, failed to satisfy a condition precedent to the policy's effectiveness. We need not consider this argument, however, because defendants' motion sought summary judgment on this contractual claim solely on the basis of lack of consideration. Only in its broadest sense might the term "consideration" be thought to include each and every condition precedent to the formation of a contract. Normally, it is roughly synonymous with "compensation." *Mecom v. Hamblen,* 155 Tex. 494, 289 S.W.2d 553, 557 (1956). We conclude, therefore, that defendants' motion for summary judgment did not present to the trial court the issue of lack of delivery. Accordingly, that issue may not form a basis for affirming the summary judgment. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 675–77 (Tex.1979); *Dhillon v. General Accident Ins. Co.,* 789 S.W.2d 293, 295 (Tex.App.1990, no writ).

he is not bound to surrender, constitutes valuable consideration for a return promise. *Anderson v. Ladd*, 131 Tex. 479, 115 S.W.2d 608, 611 (1938).

Defendants' contention that Taylor paid no consideration is correct only in the sense that he did not remit a check or cash with the application or complete a dividend withdrawal or policy loan form to pay the premium out of the cash value of the whole life policy. Taylor did, however, surrender his right for the whole life policy to continue in force.[3] Under the terms of the policy, Taylor had a right to keep the policy in force and expect the company to pay its face amount to the designated beneficiary on his death. Neither party argues that Taylor would have had that right if the policy had been effectively surrendered. If the policy was surrendered, therefore, Taylor gave up his valuable contractual right to have the insurance company pay the face amount of the policy to the beneficiary of his choice. Plaintiff asserts that he gave up this right in return for a promise from the company to provide him with term insurance, conditioned only on his meeting underwriting guidelines. We conclude that where one policy has in fact been surrendered in return, at least in part, for the insurance company's promise to issue a new policy, then the surrender of the first policy constitutes some consideration for issuance of the new policy.[4]

■ The difficulty in the present case is determining whether Taylor actually surrendered the whole life policy in return for the promise of the company, through its agent Bonilla, to issue Taylor the new term policy. This is a question of intent. Having decided that the surrender of one insurance policy may in fact be the consideration for the issuance of another policy, we now proceed to determine whether the trial court correctly determined that the summary judgment evidence conclusively showed that the parties did *not* intend the surrender of the whole life policy to be consideration for the issuance of the replacement term policy.

The movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972). The burden of proof is on the movant, and all doubts are resolved against the movant. *Turboff v. Gertner, Aron & Ledet Investments*, 763 S.W.2d 827, 829 (Tex. App.1988, writ den.).

New York Life, as the movant for summary judgment, had the burden of showing as a matter of law that there was no consideration given for the new policy. Any doubts about whether it has carried its burden will be resolved in favor of Mrs. Taylor. Because the existence of consideration depends, in this case, on the intention and understanding of Bonilla and Taylor, New York Life had the burden of proving as a matter of law that the parties did not intend or agree to treat the surrender of the whole life policy as consideration for the issuance of the term policy. It failed to do so.

■ Summary judgment is rarely proper when the cause involves an issue inherently for the fact-finder, such as intent. *Dan Lawson & Assoc. v. Miller*, 742 S.W.2d 528, 530 (Tex.App.1987, no writ); *Kolb v. Texas Employers' Ins. Ass'n*, 585 S.W.2d 870, 873 (Tex.Civ.App.1979, writ ref'd n.r.e.). In support of the summary judgment, New York Life relies primarily on Bonilla's deposition. Bonilla testified that Taylor left no check to pay a premium on the term policy. He also stated, however, that other

---

3. The whole life policy had an automatic premium protection clause. This feature allowed use of the accumulated cash value to cover any premium payments Taylor did not make. It is undisputed that more than enough cash value had accumulated on the policy to cover the cost of the premium. Therefore, had Taylor not surrendered the whole life policy, it would still have been in force at his death even if he had never paid another premium on it.

4. In so concluding, we do not hold that an insured in Taylor's position would not have to pay premiums for the continuation of the new policy. We hold only that, on issuance, the new policy would not be ineffective for lack of consideration, even if the initial premium had not yet been paid.

methods of paying an initial premium exist, and it is unclear whether these options were fully explained to Taylor. Moreover, Bonilla also conceded that, at some point in his conversation with Taylor, Taylor expressed a desire that the premium for the term policy be paid out of the cash value accumulated in the whole life policy he was surrendering.

Bonilla is an interested witness. While the testimony of such a witness may serve as the basis for rendition of a summary judgment, it may do so only if it is uncontroverted, clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. Tex.R.Civ.P.Ann. 166a(c) (Supp.1990). We conclude that Bonilla's testimony does not meet that standard. For example, Bonilla's testimony on the method of premium payment is confusing, at best. Initially, he relates that he told Taylor:

> [W]e could pay the premium of $214 with the values from the policy that he already had, so there was no new money he had to take out of his pocket to fund the new policy, because we could already use the existing cash value in his policy.

Later in his testimony, however, he insists that he apprised Taylor of the peril of not sending payment to the home office along with the application. Regarding his delay in completing the "agent's statement" that was to accompany the application, Bonilla testified initially that he wanted to do everything possible to reduce the gap in coverage he "knew" Taylor would have. Later testimony, however, disclosed that Bonilla delayed for a number of days completing the agent's statement and mailing Taylor's application. As explanation for the delay, Bonilla stated that since no premium had been paid with the application, there was no hurry in obtaining issuance of the new policy. We conclude that Bonilla's testimony is not sufficiently clear, positive, and free from contradictions and inconsistencies to allow it to serve as the basis for summary judgment.

Bonilla's testimony is the only evidence of intent offered by defendants. We conclude, therefore, that New York Life has failed to establish as a matter of law that the parties did not intend for the surrender of the whole life policy to serve as consideration for the effective issuance of the term policy.

In addition, plaintiff asserted that Taylor and Bonilla intended for a portion of the cash surrender value of the whole life policy to be used to pay a premium on the term policy. The summary judgment evidence does not conclusively disprove such an agreement or understanding. First, for reasons stated above, Bonilla's testimony as to the parties' intent is not conclusive. Second, we conclude that the summary judgment evidence does not show as a matter of law that, in cashing New York Life's check, Taylor was aware that money for the payment of the term policy premium had not been deducted therefrom. Accordingly, Taylor's cashing the surrender value check does not, in and of itself, conclusively negate the existence of such an intent. Mrs. Taylor's first point of error is sustained.

### THE DIRECTED VERDICT

We turn now to Mrs. Taylor's contractual claim under the whole life policy. At trial, after all evidence had been presented, New York Life moved for a directed verdict, arguing that plaintiff had introduced no evidence that the whole life policy was in force when Taylor died. The trial court agreed and directed a verdict for New York Life as to plaintiff's contract claim on that policy. Plaintiff challenges the directed verdict, asserting that, if the term policy had not yet become effective, a fact issue existed as to the effectiveness of the surrender of the whole life policy.

A directed verdict is proper only when the evidence offered on a claim is insufficient to raise an issue of fact. *University Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 709 (Tex.App.1989, no writ); *Rudolph v. ABC Pest Control, Inc.*, 763 S.W.2d 930, 932 (Tex.App.1989, writ den.). In reviewing a directed verdict, we consider all of the evidence in the light most favorable to the party against whom the verdict

was instructed, disregarding all contrary evidence and inferences, and giving the losing party the benefit of all reasonable inferences. *White v. Southwestern Bell Telephone Co.*, 651 S.W.2d 260, 262 (Tex. 1983); *University Nat'l Bank*, 773 S.W.2d at 709. If there is conflicting evidence of probative value on any theory of recovery, or if reasonable minds could differ as to the truth of any controlling facts, the issue is for the jury. *White*, 651 S.W.2d at 262; *Jones v. Tarrant Utility Co.*, 638 S.W.2d 862, 865 (Tex.1982); *Rudolph*, 763 S.W.2d at 932.

New York Life contends that Taylor's surrender was unequivocal because the surrender request form he completed indicated on its face that the surrender should be effective immediately. Plaintiff argues that the surrender of the whole life policy and the application for the term policy were part of one transaction. The obvious goal of this transaction, she argues, was to coordinate the issuance of an effective term policy and the surrender of the existing whole life policy so that no gap would occur in Taylor's coverage; i.e., the issuance of the term policy was intended to trigger the cancellation of the whole life policy.

Both sides rely heavily on *Green v. American Nat'l Ins. Co.*, 452 S.W.2d 1 (Tex.Civ.App.1970, no writ), albeit for different reasons. In *Green*, the insured had mailed a written surrender instruction to his insurance company. He had also sent the company written assurance that he did not want a loan pledged against the policy's cash value. The insured died prior to receiving his accumulated cash value, and the company tendered the cash value to the estate. The executor refused tender, asserting that the surrender transaction was not completed before the insured's death. Therefore, the executor argued, the policy beneficiary was entitled to the policy's face value. The court of civil appeals disagreed, however, affirming the trial court's summary judgment in favor of the company.

*Green* is distinct from the present case in two important respects. First, the insured in *Green* was not attempting to replace his existing policy or to obtain any other benefits from the company; consequently, his surrender of the policy could not have been consideration for a new policy to be issued. Second, there was no evidence that the insured expected the future occurrence of some specified event to trigger the surrender. The absence of any instructions that the surrender take place only under certain conditions indicates that the surrender was exactly what the court called it: an unequivocal notice to the company of a wish to surrender the policy. Although *Green* stands for the general proposition that a company may not refuse to honor the insured's unequivocal surrender demand, it does not control the present case.

In *McCormick v. Travelers' Ins. Co.*, 215 Mo.App. 258, 264 S.W. 916, 922–23 (1924), the court accepted the premise that the surrender of one policy could be conditioned on the effective issuance of a replacement policy. The court went on to hold, however, that the plaintiff had produced no evidence to raise a fact issue as to the purported condition. *McCormick* stands only for the proposition that the simultaneous surrender of one policy and application for another does not, without more, raise an inference that the surrender of the old was conditioned on issuance of the new.

■ In the present case, in contrast to *McCormick*, the completed application form contained Bonilla's notation that the whole life policy being replaced was to terminate "when [the] new policy iss[ued]." The New York Life officer in charge of handling whole life policy surrenders testified that he would not have given effect to the surrender of Taylor's policy if he had seen this notation. Unfortunately, the application form was not directed to his department. We conclude that Bonilla's notation on the application form, coupled with the fact that the term policy was apparently intended to replace the whole life policy, constitutes more than a scintilla of evidence that the parties agreed or understood that the whole life policy would not be canceled unless and until the new term policy was in place.

Generally accepted principles of contract law are helpful in explicating our conclusion. A surrender clause that permits the insured to cancel the policy at his discretion is an irrevocable continuing offer from the company. The offer becomes binding when the insured unconditionally accepts it. *Gram v. Mutual Life Ins. Co. of New York*, 300 N.Y. 375, 91 N.E.2d 307, 310 (1950). In the insurance context, just as with other types of contracts, a counteroffer that differs in any material respect from the original offer does not constitute an acceptance of the original offer. Neither party is bound to any action until and unless the counteroffer is accepted. *United Concrete Pipe Corp. v. Spin–Line Co.*, 430 S.W.2d 360, 364 (Tex.1968); *Chapman v. Mitsui Engineering and Shipbuilding Co.*, 781 S.W.2d 312, 316 (Tex.App.1989, writ den.). At least one court has held that the instruction by an insured to surrender a policy and remit its cash value on terms other than those outlined in the policy operates as a counteroffer to the company's offer to cancel. *Murphree v. Nat'l Life & Accident Ins. Co.*, 168 Miss. 667, 150 So. 534, 535 (1933). Therefore, once a surrender instruction is submitted that differs materially from that offered by the policy's terms, the company must decide to accept or reject the counteroffer. The company may not ignore the differing terms and treat the counteroffer as an acceptance of the original offer.

The whole life policy in the present case contains a standing offer to remit cash value on the insured's unconditional surrender of the policy. If, however, Bonilla's notation was a record of an understanding between Taylor and Bonilla—or even a mere instruction from Taylor—then Taylor's surrender of the policy could be considered a counteroffer requiring affirmative acceptance by New York Life, through words or action, before the surrender would become effective. Although Bonilla testified that he and Taylor did not intend the surrender to be conditional, his testimony is not conclusive, for the reasons stated above.

New York Life defends its directed verdict on the additional ground that the beneficiaries of the policy were Taylor's parents. Although Taylor had originally named his parents as the beneficiaries on the whole life policy, they assigned whatever rights they might have had to receive the proceeds therefrom to plaintiff. New York Life contends that since no company-approved change of the beneficiary designation occurred during Taylor's life, Mrs. Taylor has no right to recover the policy benefits. This contention is without merit. The policy imposed certain duties on Taylor with respect to changing his beneficiary designation, but these duties were his alone. Once a policy ripens into a matured obligation to a named beneficiary, the terms of the policy do not govern the beneficiary's rights to assign the matured obligation. The clause is intended solely to govern the actions of the insured, not those of the beneficiary. *Zidell v. John Hancock Mutual Life Ins. Co.*, 539 S.W.2d 162, 165 (Tex.Civ.App.1976, writ ref'd n.r.e.); *National Life & Accident Ins. Co. v. Lucas Funeral Home*, 89 S.W.2d 468, 470 (Tex. Civ.App.1935, writ dism'd). The whole life policy, if Taylor did not effectively surrender it, would have matured into an obligation owed by the company to the beneficiaries when Taylor died. Plaintiff's second point of error is sustained.

## THE JURY'S REFUSAL TO FIND EXTRA–CONTRACTUAL LIABILITY

In points of error three through six, plaintiff complains of the jury's answers to questions on extra-contractual liability as being against the great weight and preponderance of the evidence. In reviewing a factual sufficiency challenge to a jury finding, this Court must examine the entire record to ascertain whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex.1951). We may only reverse the jury's failure to find where the great weight of the evidence supports an affirma-

tive answer. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988).

 The record in the present case contains conflicting evidence as to whether Bonilla acted in a manner consistent with the degree of care required of a fiduciary, whether he or New York Life breached the duty of good faith and fair dealing, whether he or New York Life committed any deceptive or misleading act, and whether either of them committed any unfair or deceptive act or practice. Having considered the entire record, we conclude that the jury's refusal to find any of these grounds of liability is not against the great weight and preponderance of the evidence. We overrule points of error three through six.[5]

We affirm that portion of the judgment in favor of both defendants on the extra-contractual claims. We reverse those portions of the judgment granting New York Life a partial summary judgment as to the contractual claim on the term policy and a directed verdict as to the contractual claim on the whole life policy, and we remand those portions of the cause to the trial court.

---

**5.** Within these points of error, plaintiff's brief contains a statement that "[b]ecause the trial court refused to submit plaintiff's contract claims to the jury, ... the jury had no way to find either that the duty existed or that Bonilla breached that duty." We reject this argument for four reasons: (1) points of error three through six all complain that the jury's negative answers are against the great weight and preponderance of the evidence, not that the trial court erred in submitting the extra-contractual claims unaccompanied by questions or instructions regarding the contract claims; (2) no appropriate request or objection to the charge was made in the trial court, nor was this issue brought to the attention of the trial court in any other manner; (3) plaintiff's brief in this Court contains no explanation or citation of authority in support of this argument; (4) the extra-contractual issues are clearly separable from the contractual issues, and it appears that they have already been fairly litigated and determined. *See A.L.G. Enterprises, Inc. v. Huffman,* 672 S.W.2d 230 (Tex.1984).