ARKANSAS ANTHRACITE COAL & LAND CO. et al. v. STOKES et al.

(Circuit Court of Appeals, Eighth Circuit. November 19, 1924.)

No. 6353.

1. **Appeal and error ⊕⇒322, 336(1)—All parties defendant against whom decree has been rendered are necessary parties appellant.**

All parties defendant against whom decree has been rendered are necessary parties appellant, and their failure to join in an appeal requires dismissal unless they have been requested to and have refused to join.

2. **Appeal and error ⊕⇒322—Party defendant against whom no valid judgment could be entered not necessary party appellant.**

Where no valid judgment can be rendered against one because not personally served, nor subject to personal service, and who did not enter an appearance, and where no writ of attachment could issue against his property, he is not a necessary party appellant, no judgment being entered against his property, and his failure to join in an appeal does not require its dismissal.

3. **Trover and conversion ⊕⇒40(4)—Evidence held to show conversion of corporate stock.**

Evidence of defendant's retention of stock belonging to wife for purpose of paying or securing an alleged obligation of her husband *held* sufficient to establish a conversion thereof as to her.

4. **Trover and conversion ⊕⇒2—Trover lies for conversion of corporate stock.**

Trover will lie for conversion, not only of stock itself but for the certificate evidencing it.

5. **Trover and conversion ⊕⇒35—Conversion of stock by corporation presumed to have taken place at its office.**

In absence of evidence to show where alleged conversion of stock by corporation having offices only in Delaware and Arkansas was committed, presumption arose that stock was converted at company's office either in Delaware or Arkansas, and not in Pennsylvania, so as to render laws of Pennsylvania applicable.

6. **Equity ⊕⇒57—Equity regards that as done which ought to have been done.**

Equity regards that as done which ought to have been done.

7. **Trover and conversion ⊕⇒44—Measure of damages value with interest.**

Measure of damages for conversion in action sounding in trover is fair and reasonable market value of thing converted at time and place of conversion with interest.

8. **Appeal and error ⊕⇒882(3)—Trial below on erroneous theory not ground for reversal where appellant acquiesced.**

A litigant may not urge reversal of case because tried below on erroneous theory in which he acquiesced.

**9. Appeal and error ⟨≈⟩882(3)—Lack of evidence of reasonable value of stock surrendered by plaintiff, for which stock of defendant was to be issued, held not to require reversal.**

In equitable action against coal company for conversion of shares of stock of another company surrendered to it, for which its own shares were to be issued, lack of evidence as to market value of stock so surrendered does not require a reversal of judgment for plaintiff, equity regarding stock so surrendered as converted, as it should have been, into defendant's own stock, and particularly where case was tried nisi on that theory.

**10. Trover and conversion ⟨≈⟩40(6)—Finding of value of stock sustained.**

Evidence held sufficient to sustain finding as to value of converted stock.

**11. Pleading ⟨≈⟩236(4)—Refusal to permit amendment of answer to set up statutory lien on property converted held not error.**

In action for conversion of stock, where defendant had withdrawn indefinite plea of lien thereon and it was agreed that only issues were ownership of the stock, conversion, and value if converted, refusal of court to permit amendment of answer so as to set up a statutory lien after plaintiff had rested and defendants had practically concluded their testimony held not error.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action by Mary A. Stokes and husband against the Arkansas Anthracite Coal & Land Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Vincent M. Miles, of Ft. Smith, Ark. (Thomas B. Pryor, of Ft. Smith, Ark., on the brief), for appellants.

George O. Patterson, of Clarksville, Ark., and Ben Cravens and Fadjo Cravens, both of Ft. Smith, Ark., for appellees.

Before STONE and KENYON, Circuit Judges, and FARIS, District Judge.

FARIS, District Judge. Appellee Mary A. Stokes brought this action in the District Court of the United States, against appellant Arkansas Anthracite Coal & Land Company (hereinafter called Coal Company, for brevity) and one J. K. Gearhart, as president thereof, for the alleged conversion of 480 shares of stock each of the Coal Company and of the Pennsylvania Mining Company. Subsequently, and before the trial, the Coal Company was put into the hands of one Denman, as receiver, and he was made a party defendant.

Originally, the action was on the law side, but upon the coming in of Fremont Stokes, husband of the original plaintiff, as an intervener, it was upon the motion of defendants and by stipulation of all parties transferred to the equity side and tried by the court without a jury, with the result that appellee Mary A. Stokes had judgment and decree against the Coal Company for the sum of $8,000, with interest from the date of the alleged conversion.

No personal service was had on Gearhart, who is a resident and citizen of the state of Pennsylvania; but under a writ of attachment, issued in the case, certain lands, situate in Arkansas and which he is alleged to own, were seized and by the decree ordered sold though no personal judgment was rendered against him. Gearhart appeared specially and moved to quash the alleged service of summons upon him. It had been sought to serve him by the publication of a warning order, pursuant to the practice and procedure of the local courts. The record fails to disclose what, if any, action was had upon this motion to quash; but Gearhart in no wise appeared or answered, and he does not join in this appeal.

From the decree thus rendered, the Coal Company and its receiver, only, appeal. Because Gearhart did not join in the appeal, and because, as it is now urged, no valid reason is shown by the record for his failure to do so, we are confronted on the threshold of the case by a motion of appellees, which was submitted with the case, to dismiss the appeal.

[1] It is well settled that all parties defendant, against whom a decree is rendered, must join in an appeal therefrom, unless those failing to join have been requested to do so and have refused, which facts of request and refusal must, to obviate dismissal appear of record. 4 Foster, Federal Practice 3770; Inglehart v. Stansbury, 151 U. S. 68, 14 S. Ct. 237, 38 L. Ed. 76; Hardee v. Wilson, 146 U. S. 179, 13 S. Ct. 39, 36 L. Ed. 933. Since nothing appears in the record touching either a request to or a refusal by Gearhart to join in this appeal, this motion must be sustained, if the trial court, having jurisdiction over him, rendered a judgment against him.

As said, Gearhart is a citizen and resident of Pennsylvania, as the complaint itself avers. He never appeared in the case, except specially, and then only for the purpose of moving to quash the attempted service on him. This action was begun in the District Court of the United States, and not in a state court. In the case of Big Vein Coal Co. v. Read, 229 U. S. loc. cit. 36, 33 S. Ct. 694, 57 L. Ed. 1053, involving a similar situation, the Supreme Court of the United States said:

"Section 915 was before this court in Ex

parte Railway Company, 103 U. S. 794, and it was held that as, under section 739 of the Revised Statutes, Act of March 3, 1875, 18 Stat. 470, c. 137, then in force, no civil action, not local in its nature, could be brought against any one by original process in any United States Circuit Court other than that for the state of which he was an inhabitant or in which he was found at the time of serving the writ, an attachment could not be issued, the defendant being a nonresident and not having been served with process. It was further held that an attachment was but an incident to a suit and unless the suit could be maintained the attachment must fall. In other words, in cases where the defendant could not be sued and jurisdiction acquired over him personally, the auxiliary remedy by attachment could not be had, as attachment was not a means of acquiring jurisdiction. The same view was taken in Nazro v. Cragin, 3 Dillon, 474, by Mr. Justice Miller, on the circuit. Ex parte Railway Company, supra, was but an affirmance, as to the right of attachment where no personal service could be had, of the former case of Toland v. Sprague, 12 Peters, 300, wherein it was held that a person was not amenable to attachment against his property except where process could be served upon his person."

[2] Since, therefore, Gearhart was neither served personally, nor was he subject to personal service, nor did he enter his appearance, no valid judgment could be rendered against him, and no valid writ of attachment could issue against his property, or alleged property. He was not required to appeal from a judgment, or an order which the court had no jurisdiction to enter. We need not discuss the effect, or possible effect, which his joinder in this appeal might have had upon the question of jurisdiction, but merely rest content in holding that the rule requiring joinder in the appeal of all those persons against whom a decree has been entered ought not and does not apply here. It follows that the motion to dismiss the appeal should be overruled.

Coming now to the merits: Three assignments of error are made in the brief of appellants and strenuously urged for reversal: (a) That under the facts in evidence there was no conversion of the stock by defendants; (b) that there was no sufficient evidence of the market value of the stock, at the time of its alleged conversion; and (c) that the court erred in refusing to permit the introduction of evidence proffered to show that defendant Coal Company was

2 F.(2d)—33

holding the stock, because of a debt owing by Fremont Stokes to the Coal Company.

[3] We are unable to concur in the insistence of defendants' counsel that there is no evidence of the fact of conversion. The evidence showed, and it was not denied, that Fremont Stokes sent two certain certificates for 480 shares of stock each, in the Coal Company and in the Pennsylvania Mining Company, owned by him and then standing in the name of Gearhart, trustee, or of Fremont Stokes, to Gearhart, as president of the Coal Company, with the request that in lieu thereof (as had been theretofore discussed and agreed) 960 shares of stock of the Coal Company be issued to Mary A. Stokes. Fremont Stokes testified that he had theretofore given this stock to his wife, Mary A. Stokes, the plaintiff herein. Much correspondence was had both before and after the forwarding of this stock to defendant Coal Company. But shortly after these two certificates of stock were sent to defendant Coal Company, Gearhart wrote to Fremont Stokes, among other things, this: "Relative to certificate for 480 shares in both companies standing in my name as trustee. I will issue in place thereof 960 shares of Coal Company stock in name of Mary A. Stokes and the balance of commission stock due you in your name and send to you in a few days. The commission stock will be issued at this time."

Subsequently, the Coal Company issued a single certificate for 1,045 shares of its stock in the name of Fremont Stokes, but never forwarded same to him or to Mrs. Stokes. So far as the record discloses, the Coal Company has this certificate yet. This certificate for 1,045 shares seems to include the 960 shares which Gearhart agreed to issue in the name of Mary A. Stokes and forward to her. This fact, as well as the alleged reason for the retention of the stock, is deducible from the testimony of Gearhart, who says: "When the stock became distributable, that is, the trustee stock was distributable, I turned it over to the company for distribution, and on the distribution there was issued to Mr. Stokes, as I remember, 1,045 shares, and on account of Mr. Stokes not having carried out his agreement with the company, the company kept his stock." However, elsewhere in the record this witness renders it obscure whether this certificate was in the name of Stokes, or Gearhart, as trustee.

Therefore, the ultimate undisputed facts are: That Fremont Stokes, in May, 1917, owned and had in his possession two certifi-

cates for a total of 960 shares of stock; that he gave this stock to his wife; as her agent, he forwarded it to defendant Coal Company, in order to have the two certificates exchanged for a single certificate for 960 shares of stock in the Coal Company to be made out in her name; the Coal Company agreed, through its president, to so issue said certificate and to send it to Stokes for his wife; that a certificate, which included, among a larger number of shares, the 960 in controversy, was issued, not to Mrs. Stokes, but either to Fremont Stokes or to Gearhart as trustee, which certificate was by the president of the Coal Company delivered to such company and kept by it and is yet retained by it, because of the alleged reason that Stokes had not carried out his agreement with the Coal Company.

In such situation we need not discuss or consider what the legal status would have been if the Coal Company had gotten possession of 960 shares of Fremont Stokes' stock, and had attempted to hold it because Stokes had not lived up to some agreement existing between Stokes and the Coal Company. But when the Coal Company got possession of 960 shares of stock of Mary A. Stokes, a retention of it for the purpose of paying or securing an alleged obligation of Fremont Stokes constituted, upon the pleadings and evidence here, as to the actual owner, a conversion of it.

[4, 5] Formerly, a negligible number of courts held to the view that because shares of stock are intangible, trover would not lie for their conversion. But this doctrine has by most courts long been discarded, and the overwhelming weight of authority now is that trover will lie for the conversion not only of the stock itself, but of the certificate which evidences it. 7 R. C. L. 197; 26 R. C. L. 1105. However, counsel insist, citing Neiler v. Kelley, 69 Pa. 403, that the established rule is otherwise in the state of Pennsylvania, and that the law of Pennsylvania is controlling. Without passing upon the latter point, it is enough to say that there is no evidence in the record that the conversion took place in the state of Pennsylvania. The Coal Company is a corporation under the laws of the state of Delaware. If it ever had an office in the state of Pennsylvania, the record fails to show this fact. Its verified report to the secretary of state of the state of Delaware discloses but two places of business, one in Delaware and one at Clarksville, Ark.—none in Pennsylvania. The record does not show in what state the conversion occurred. It does show

that when the certificate for 1,045 shares was issued by Gearhart, he turned it over to the Coal Company, and that the latter kept it and still retains it. If, then, the Coal Company had but two places, whereat it was authorized to do business, and its officers swore to this fact, absent as here upon the record some evidence of the place of conversion, the presumption inevitably arises that this stock was converted to the use of the Coal Company, at its office, either in the state of Delaware, or in the state of Arkansas, and so in no event does the law of Pennsylvania apply.

[6] The question whether there was any sufficient evidence of the fair and reasonable market value of the stock in controversy at the time of its conversion is one which presents much difficulty. This contention is presented in dual phases; specifically, it is contended, that there is no proof whatever as to the value of the stock in the Pennsylvania Mining Company. This is true, but at the insistence of defendants the case was transferred to the equity side of the docket, and there by stipulation tried as an equity suit. The complaint avers that a certain certificate for 480 shares of stock in the Pennsylvania Mining Company, with another for a like number of shares of stock in the Coal Company, was sent to the defendants, pursuant to an agreement that in lieu thereof a certificate should be issued to Mary A. Stokes for 960 shares of stock in the Coal Company, and this latter certificate when issued should be sent to her. The issues upon the question of the existence of this agreement were not denied, and moreover were by the court found for plaintiff Mary A. Stokes, for such a finding is necessarily included in the judgment rendered. Equity regards that as done which ought to have been done. Craig v. Leslie, 3 Wheat. 563, 4 L. Ed. 460; Cropley v. Cooper, 19 Wall. loc. cit. 174, 22 L. Ed. 109. Besides, the evidence shows that the certificate for 480 shares of the stock in the Pennsylvania Mining Company was canceled and was included in a certificate for 1,045 shares of Coal Company stock, and in this condition was retained by the latter company.

[7-9] The case was tried below, without objection, upon the theory that the fair and reasonable market value of stock in the Coal Company was alone involved and that the place, whereat such value was to be ascertained, was in Arkansas. It is, of course, elementary that the measure of damages for conversion in an action sounding in trover is the fair and reasonable market value of

the thing converted, at the time and place of conversion, with interest. Furst v. Fargason (C. C. A.) 287 F. 306. But it is also well-nigh universal and fundamental, as a rule of appellate procedure, that a litigant may not mend his hold on the way up to an appellate court by seeking to reverse a case, because the theory on which it was tried below, and in which appellants then acquiesced, is, in fact, erroneous. In short, to state the rule simply and baldly, the theory on which a case is tried nisi is the theory on which it must, on appeal, be weighed for error. For either or both of these reasons the contention that there was no evidence of the value of stock in the Pennsylvania Mining Company should be disallowed.

[10] Upon the remaining or general phase of this question, it is contended that there was no sufficient evidence even, of the value of Coal Company stock. This stock is variously in the record called "promotion," "treasury," and "commission" stock. Its par value was $25 per share, or $24,000 in all. It is by all parties conceded that it never was worth par, that it had never sold for more than $15 per share, and that sales at the latter price were made only in promotion of the company. Upon the trial the difficulty of proving market value was clearly recognized by the court and counsel, and many expedients had to be resorted to. Among these were: Value at which the stock was then being sold, as said already; value of the property owned by the company, less debts, as shown by judgments outstanding, and as contrasted with stock outstanding, but less treasury stock unsold. There was also some direct evidence from one witness that this actual value was $15 per share. The court found that it was worth $8$^1$/$_3$ per share, and bottomed the judgment rendered on this valuation. It is now generally held that where the fact of damage is certain, mere uncertainty as to the amount of damages will not preclude recovery, and particularly is this true where, from the nature of the case, the extent of the injury and the amount of the damage, are not capable of exact and accurate proof. 8 R. C. L. 442. The finding of value by the court was much less than the value put up-

on the stock by Fremont Stokes, who was the only witness who undertook to put a value on it. Without passing upon the probative weight of evidence as to property holdings compared with debts and outstanding judgments, we are of opinion that the evidence offered, which was not denied, warranted the finding made.

[11] In the course of the trial, after plaintiff had rested, and when the offering of testimony on defendants' part was practically concluded, defendant Coal Company sought to prove that it was holding this stock by virtue of a lien alleged to be given to it by the statutes of Arkansas. The trial court refused to permit evidence to come in upon this question, for the reason that no such defense was set up in the answer. Thereupon defendants asked leave to amend their answer so as to plead such alleged lien. This proposed amendment the court denied. And this is urged as error. This specific assignment is not found among the assignments of error, but is urged in the body of the brief.

Antecedent facts throw light upon this contention. In the answer of defendants it was vaguely and indefinitely pleaded that the Coal Company retained the stock in controversy because Fremont Stokes, the husband of plaintiff and the donor to her of the stock, was indebted to the Coal Company. To this plea, a motion to make more definite and certain was filed. Upon the court's announcing that he was of the opinion that this motion ought to be sustained, counsel for defendants withdrew all that part of the answer setting up any claims against Fremont Stokes, and it was agreed that the only issues to be tried were: (a) The ownership of the stock; (b) the conversion of the stock; and (c) the value of the stock, if it had been converted. In the light of this agreement, which appears of record substantially as above written, we are of the opinion that in refusing to permit the amendment and reopen the case the trial court did not abuse that sound judicial discretion abiding in him in such a situation.

The record is a very much involved and needlessly complicated one, but finding no errors warranting reversal we conclude that it ought to be affirmed, and so order.