# VALLEY SHOE CORPORATION v. STOUT et al.

## No. 11035.

Circuit Court of Appeals, Eighth Circuit.
Aug. 24, 1938.

Daniel N. Kirby, of St. Louis, Mo. (Ralph Kalish and Everett Paul Griffin, both of St. Louis, Mo., on the brief), for appellant.

Frank Y. Gladney, of St. Louis, Mo. (Jones, Hocker, Gladney & Grand and Web A. Welker, all of St. Louis, Mo., on the brief), for appellees.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This action at law was brought by the appellant, a corporation engaged in the manufacture of women's shoes, against the appellees, manufacturers of leather, to recover damages for an alleged breach of warranty that highly colored leather, purchased by the appellant from the appellees in the year 1932 for the purpose of lining women's shoes, would not fade or crock. Issues were joined, the case was tried to a jury, and from the judgment entered upon the verdict in favor of the appellees, this appeal is taken. The parties will be referred to as "plaintiff" and "defendants".

The plaintiff challenges the court's instructions and some of its rulings upon evidence.

In its amended petition the plaintiff alleged:

"That on or about December 18, 1931, plaintiff was considering the possibility of making and introducing into the market as a novelty, various kinds of women's shoes having bright or highly colored kid leather linings of various colors, to-wit, orange, blue, green and red, and thereupon plaintiff informed defendants' said sales agent that plaintiff wished to make and market such novelties, being women's footwear having highly colored leather linings more attractive in appearance than the pastel shades then being used. That plaintiff then asked defendants' said agent whether defendants could and would make for and furnish to plaintiff bright or highly colored leather linings for women's shoes, the colors of which would be fast, would 'stick', and would not 'crock' (i. e. rub off), or fade, and in that connection plaintiff informed said agent that several other tanners had refused to make such bright colored lining leathers, because they were afraid such colors would 'crock', i. e. would rub off, or fade.

"That thereupon defendants' said agent stated to plaintiff, that defendants' tannery had just perfected a new waterproofing process which would be used in making said leathers and that said process would cause said leathers, if made by defendants for plaintiff, to have fast and high colors of the kinds desired by plaintiff to be used for the linings of women's shoes, and that said colors would not fade or 'crock' (rub off).

"That thereupon defendants' said agent solicited an order from plaintiff for such leathers, and stated to plaintiff that defendants could and would make for, and furnish to, plaintiff, such leathers with the desired colors which would prove fast, would stick, and would not fade or rub off or 'crock', and that if plaintiff should order such leathers from defendants, the plain-

tiff would have no trouble in respect of the colors fading or 'crocking' (coming off).

"That thereupon plaintiff furnished said agent with samples of the particular high colors desired, and requested him to inquire of defendants and particularly of those in charge of defendants' tannery, in order to make certain that the defendants could furnish leathers having the desired bright colors which would 'stick' and not fade, or rub off ('crock').

"That shortly thereafter, defendants' said agent again called upon plaintiff, and stated to plaintiff, that he had heard from defendants and that defendants could and would make, and furnish to plaintiff, the said desired leathers with the said desired bright colors which would 'stick' and would not fade or 'crock' * * *.

"That each and all of the said statements and representations made to plaintiff as aforesaid, were made in order to induce, and they did induce, plaintiff to buy such leathers from defendants, and they constituted warranties that such leathers, when sold and delivered by defendants to plaintiff, would have the high colors ordered, and that said colors would 'stick' (prove to be 'fast'), and would not fade or rub off (i. e. 'crock'), and would be suitable for the said use which plaintiff intended to make of them, said intended use being well known to defendants at the times when said warranties were made and when said leathers were ordered by plaintiff and delivered to plaintiff by defendants."

The plaintiff further alleged that it lined about 16,929 pairs of shoes with the leather complained of; that the linings of 5,238 pairs of such shoes proved defective and resulted in a loss to it of $22,392.57.

To the amended petition the defendants interposed a general denial.

Upon the trial the evidence introduced by the plaintiff tended to prove that in 1932, as an innovation, it undertook to manufacture and market women's shoes with highly colored leather linings; that women's shoes had been, ordinarily, lined with pastel colored leather; that several tanners of leather, interviewed by the plaintiff, refused to furnish highly colored leather for lining shoes, on the ground that the colors of such leather would rub off and crock; that Wills Engle, a salesman of the defendants in St. Louis agreed, on behalf of the defendants, to furnish highly colored lining leather, and expressly represented and warranted that such leather would not

fade or crock; that, in reliance upon this representation and warranty made by Wills Engle, the plaintiff ordered the leather and used it, after having received samples which were tested and found apparently satisfactory; that Wills Engle was the son and employee of Alfred N. Engle, who had long been the sales representative of the defendants in St. Louis; that Alfred N. Engle in 1926 or 1927 had introduced Wills Engle to the plaintiff's officers as the defendants' local sales agent, and that they thereafter frequently dealt with him in that capacity, and that in selling the plaintiff the leather in suit he stated that he had authority to make the representation and warranty upon which it relied. The plaintiff produced no evidence that the defendants themselves had ever represented that the leather which they furnished would not crock, or that they had ever expressly authorized Wills Engle to make the warranty or representation which the plaintiff claims was made. There was evidence introduced by the plaintiff to sustain its allegations as to damages.

Wills Engle, as a witness for the defendants, testified that he was employed by them as a salesman in St. Louis; that he took the orders for the leather in suit; that he never represented that such leather would not crock or that the colors would not fade or rub off; and that he knew, when he sold the leather, that it would crock. Other evidence of the defendants tended to prove that all artificially colored leather crocks; that there is no way known to the trade to dye or color leather so that it will not crock; that pastel or neutral colored leather, when used for the lining of women's shoes, is unobjectionable because the color as it rubs off does not noticeably discolor women's stockings; that the defendants have never warranted that their colored leather would not crock or that its colors were fast, and have never authorized their agents to do so, and that warranties of color, either express or implied, were unknown in the leather business.

At the close of the evidence, there were, aside from the question of damages, but two controverted questions of fact for submission to the jury:

1. Did Wills Engle represent that the leather in suit would not crock?

2. If he did make that representation, was it made with the authority of his principals, the defendants?

The plaintiff, however, contends that there was a third question lurking in the

case, namely, the question of implied warranty of the fastness of the color of the leather, and that neither the pleadings nor the proof negatived the existence of an implied warranty of the suitability of the highly colored leather for the purpose for which it was to be used; and that the court below should have submitted that question to the jury.

The case was tried upon the theory of an express warranty. In objecting to certain evidence going to the question of implied warranty, plaintiff's counsel said: "This is a suit brought under express warranty." Again, in objecting to evidence as to whether it was customary to guarantee the fastness of the color of leather, he said: "I object to whether it has ever been the practice to do that, as being entirely immaterial in this case. If it was done in this case and they represented it to us, that is sufficient."

The rulings of the court were favorable to the plaintiff on both of these objections.

In his argument to the jury, one of the defendants' counsel said: "If you analyze all the testimony, all the documents that have been introduced, you have this simple question: warranty or no warranty? If you shall ultimately believe and find that Wills Engle did not warrant this leather not to crock or not to rub off, then the other incidents in connection with the evidence become null and void. Now, the testimony on that point, as indicated by Mr. Griffin, is squarely contradictory. The plaintiff said that he did make such warranty; he denied emphatically that he made any such warranty. Then, therefore, the testimony on that point is directly conflicting."

Thereafter counsel for the plaintiff, in his reply argument, said to the jury: "We were trying to find out whether, before we put these in the shoes, whether they could be made. And so these gentlemen who are in the business of tanning leather, who could not make this leather. Well, what of it? That had nothing to do with this case. We tried to find them; we could not find them until the John R. Evans Company came and said, 'We have a special process of waterproofing so that this high colored leather won't fade.' They had something special, different from all the other tanners. The other tanners tried it; they couldn't do it; but John R. Evans represented that they could do it. That is what this case is about, gentlemen, and

do you think that John R. Evans is going to bring in every special private, patented process here to all the other tanners?"

And again: "Now if you believe he [Wills Engle] did make that representation, we relied on it, and we were damaged, it does not make any difference whether other tanners could make this leather or not, or whether it was known all over the leather trade that you could not make this leather, if that company undertook to represent that it had a secret process and made these representations, and we relied on them, and we are damaged, then he is liable, the defendant is liable."

And again: "Those people were dealing with, trusting this man, and they believed him, and they bought the goods on his representation."

Nothing was said with respect to an implied warranty of the color of the leather in any of the arguments to the jury.

The trial court, after having sustained objections made by counsel for the plaintiff to evidence offered by the defendants tending to show that there could have been no implied warranty, and after having listened to the arguments of counsel, which contained no reference to an implied warranty, instructed the jury, in part, as follows:

"The short and simple issue for you to determine in this case is whether or not this warranty was made by the defendants, and whether or not the plaintiff suffered any damage by reason thereof.

"Did the defendants make this representation and warranty to the plaintiffs? If you find they did, your verdict ought to be in favor of the plaintiff, if you find that they suffered any injury or damage by reason of the breach of that warranty. On the other hand, if you find that the defendants made no such a representation as is claimed to plaintiff, then your verdict in this case ought to be in favor of the defendants.

\*     \*     \*     \*     \*     \*

"Under the pleadings and the proofs in this case, the plaintiff cannot recover damages on a warranty implied in law that said leathers were fit for the use intended by the plaintiff.

\*     \*     \*     \*     \*     \*

"Plaintiff's demand in this case is based upon the assertion of an express warranty that the colors on leather sold to the plaintiff were fast and would not fade, and unless you find that such express warranty

was made by the defendants, the plaintiff in the case is not entitled to recover."

Directly contrary to the theory upon which the case had been tried and argued, and without having tendered to the court any request for instructions with respect to an implied warranty, counsel for plaintiff took exception to the instructions of the court confining the issues to an express warranty, and now asserts that the court should have submitted to the jury the question of implied warranty as well. We see no merit in this contention. We think it would have been error for the court, in view of what transpired during the trial, to have submitted this question to the jury and would almost certainly have caused a mistrial or reversal on appeal in case there had been a verdict favorable to the plaintiff. Moreover, this Court, on appeal, must adhere to the theory upon which the case was tried in the lower court. Barnsdall Refining Corp. v. Cushman-Wilson Co., 8 Cir., 97 F.2d 481, 485; Arkansas Anthracite Coal & Land Co. v. Stokes, 8 Cir., 2 F.2d 511, 515; Murray v. Cunningham, Mo.App., 1936, 96 S.W.2d 881, 883; Offutt v. Battagala, Mo.App., 1931, 44 S.W.2d 202, 204.

The plaintiff contends that the trial court misled the jury in the giving of additional instructions. It appears from the record that some time after the jury retired, they returned to the courtroom for further instructions. The court had told them in the charge, in substance, that, even though they found that Wills Engle, the defendants' agent, had warranted the leather, as claimed by the plaintiff, the defendants would not be liable unless he had acted by their authority; that if they had permitted Wills Engle to act for them as their agent and to so conduct himself that their customers, and particularly the plaintiff, might reasonably infer that he was authorized to make the representations with reference to the leather which it claimed that he did make in the taking of the plaintiff's order and in the making of the sale, then he was in effect and for the purposes of this litigation the agent of the defendants and the defendants were bound by what he had represented. The court had also instructed the jury that it is a rule of law that a person dealing with an agent is bound at his peril "to see that the agent has authority to bind his principal in such transaction."

The foreman of the jury, in requesting additional instructions, said to the court: "There is some confusion in the minds of the jury, regarding your instruction as to whether or not a guaranty, if, in the event it had been given by Mr. Engle at the time this transaction was made, had to be confirmed by the manufacturers, to be legal."

The court replied: "Well, I will answer that question now. He had to have authority from his principal to make such a guaranty and such a warranty. There is no evidence in the case that he was expressly authorized to do that, but you must be able to find from the evidence that he was vested with that authority."

The foreman then said: "Your Honor, there is also some confusion in the minds of the jury that that authority had not been given, whether that in itself would be the reason for bringing in a verdict, or whether, even if the jury believed that, a part of the claim of the plaintiff could be allowed."

The answer of the court was: "There would be no authority for dividing, splitting the claim on that account. You must find that the agent had authority to make the representation, if you think he did make it."

Counsel for the plaintiff then said: "I think that I want to except to those instructions. They seem to be prejudicial to the plaintiff. They are prejudicial to the plaintiff, I believe. I think Your Honor should instruct them again on that circumstantial evidence that they can infer authority from the acts and conducts of the agent, and also that in other instructions, that even though the principal did not authorize him expressly, if he represented that to us, that there could be a verdict for the plaintiff; I mean when you detach these two instructions, without the other instructions on the circumstantial evidence, the apparent scope of his authority, sort of leaves it up in the air."

One of the counsel for the defendants then said: "The effect of that, to again instruct them on that feature of the case without reviewing all of the instructions would simply be to emphasize just a portion of the instructions already given."

The court said: "We will allow your exception." Counsel for the plaintiff said: "I think the Court should reread the instruction so that they get that one on the apparent scope of the authority. I think that should be explained to the jury, that

all of the instructions heretofore given are to be considered."

The court then instructed the jury: "You should consider what we just said to you, gentlemen, in connection with the other instructions that were given you at the time the case was concluded, consider what we have just now said in conjunction with and as a part of the other instructions that we gave you this afternoon."

Plaintiff's counsel took no further exception, and apparently was satisfied with this disposition of the matter, but the next morning, before the jury had retired for further deliberation, asked the court to give the following instruction: "You have asked whether the guaranty if it was made had to be confirmed. The court answered that by saying that the agent had to have authority. The court also said that there is no evidence in this case of express authority. However, gentlemen, the court further instructs you that authority may be implied from circumstances and a course of dealing. If there is implied authority to make a warranty, that is sufficient and if that implied authority existed, it did not need to later be ratified or confirmed."

The court refused to give this instruction, and the plaintiff took an exception.

■ It is apparent that what the jury wanted to know was whether, if they were satisfied that Wills Engle had made the representation which the plaintiff claimed he had made, they might bring in some sort of a verdict in the plaintiff's favor, regardless of whether they believed that Wills Engle had any authority from his principals or not. They did not ask the court to instruct them further with respect to the question of an implied authority or apparent authority. Those matters had been covered by the general charge. The Judge was not required to do anything more than answer the question which the jury asked, as he understood the question. He was not required to restate what he had already covered by his charge. The substance of what he said, as we understand it and as we think the jury must have understood it, was that unless Wills Engle had authority to make the warranty which the plaintiff claims was made, the defendants were not liable. Since there was no evidence that the defendants ever confirmed the representation or warranty alleged to have been made by Wills Engle, there was no occasion to instruct the jury

with regard to what effect confirmation might have had.

■ We regard the court's answers to the jury's questions as correct statements of the law. They were apparently regarded by the jury as sufficient, because no further questions were asked. The court committed no error in denying the plaintiff's request for a further instruction, the subject-matter of which had been fully covered by the court in its charge. See Standard Accident Ins. Co. v. Rossi, 8 Cir., 52 F.2d 547, 550; Fidelity & Deposit Co. of Maryland v. Bates, 8 Cir., 76 F.2d 160, 172; Hall v. Aetna Life Ins. Co., 8 Cir., 85 F.2d 447, 450; O'Connor v. Ludlam, 2 Cir., 92 F.2d 50, 56; Long Transp. Co. v. Domurat, 7 Cir., 93 F.2d 23, 25; Department of Water and Power of City of Los Angeles v. Anderson, 9 Cir., 95 F.2d 577, 586; Kost v. Freeman, Mo.App., 1937, 101 S.W.2d 94, 96; Feinstein v. Glick, Mo.App., 1938, 116 S.W.2d 141, 145. Much of this requested instruction was not responsive to any question asked by the jury, and, in view of the court's direction to the jury to consider the additional instructions given, in connection with the general charge, it must be presumed that that was done.

The plaintiff argues, however, that the court erred in telling the jury that there was no evidence that Wills Engle was expressly authorized to warrant the leather, and asserts that the jury might from the evidence have found both express and implied authority in Wills Engle to make the warranty.

It is unnecessary to again discuss the legal distinctions between express, implied, and apparent authority. See Hall v. Union Indemnity Co., 8 Cir., 61 F.2d 85, 90-92. All that a jury of laymen could have understood from the court's answers was that there was no evidence that the defendants had at any time directly by word of mouth told Wills Engle or had in writing advised him that he could warrant that these leather linings sold to the plaintiff would not crock. That was a true statement and was in substance incorporated by the plaintiff in its request for a further instruction.

The issues of fact made by the pleadings and the proof were submitted to the jury under instructions which, taken as a whole, we think were full, fair and accurate, and, if anything, more favorable to the plaintiff than otherwise.

■ The rule is that the charge as a whole is to be considered, and not some isolated portion of it. Metropolitan Life Ins. Co. v. Armstrong, 8 Cir., 85 F.2d 187, 194; Pryor v. Strawn, 8 Cir., 73 F.2d 595, 598; Zurich General Accident & Liability Ins. Co. v. O'Keefe, 8 Cir., 64 F.2d 768, 771; S. S. Kresge Co. v. McCallion, 8 Cir., 58 F.2d 931, 933, 934; Travelers' Ins. Co. v. Schenkel, 8 Cir., 37 F.2d 254, 255; Oldham v. Standard Oil Co., Mo.App., 1929, 15 S.W. 2d 899, 900; Connole v. East St. Louis & S. Ry. Co., 1937, 340 Mo. 690, 102 S.W.2d 581, 589, 590.

Dealing generally with the contentions of the plaintiff with respect to rulings on evidence:

■ Its first complaint is that the court erred in admitting testimony of persons connected with the shoe and leather industry to the effect that all colored lining leathers would crock, that they had never heard of any which had fast colors, and that a guaranty of the fastness of the color of leather was unknown to the leather trade. This evidence was clearly admissible on the issue of the scope of Wills Engle's implied or apparent authority as a sales agent of the defendant. Noyes-Norman Shoe Co. v. Cooper, Mo.App., 1928, 4 S.W.2d 486, 487; Wind v. Bank of Maplewood & Trust Co., Mo.App., 1933, 58 S.W. 2d 332, 335, 336; Standard Crown Co., Inc., v. Jones, 196 N.C. 208, 145 S.E. 5, 6.

■ The plaintiff also contends that certain correspondence which passed between the New Jersey office of the defendants and their branch office in St. Louis relative to the leather in suit should not have been admitted over the objection that it contained self-serving declarations. These inter-office communications were hearsay. Gregory Consolidated Mining Co. v. Starr, 141 U.S. 222, 226, 11 S.Ct. 914, 35 L.Ed. 715; Insurance Company of North America v. Guardiola, 129 U.S. 642, 643, 9 S.Ct. 425, 32 L.Ed. 802; Vicksburg & Meridian Railroad Co. v. O'Brien, 119 U.S. 99, 101-103, 7 S.Ct. 118, 30 L.Ed. 299; Freeborn v. Smith, 2 Wall. 160, 69 U.S. 160, 176, 17 L. Ed. 922; Ambler v. Bloedel Donovan Lumber Mills, 9 Cir., 68 F.2d 268, 270; Massachusetts Bonding & Ins. Co. v. R. E. Parsons Electric Co., 8 Cir., 61 F.2d 264, 272, 92 A.L.R. 218; Armborst v. Cincinnati Traction Co., 6 Cir., 25 F.2d 240, 241; Bella S. S. Co. v. Insurance Co. of North America, 4 Cir., 5 F.2d 570, 572; Weller v. Weaver, 1936, 231 Mo.App. 400, 100 S.W.2d 594, 597; McCormick v. Travelers' Ins. Co., 1923, 215 Mo.App. 258, 264 S.W. 916, 922.

■ However, the admission of the correspondence objected to was not prejudicial error, for the reason that it had no substantial bearing upon any controversial issue of fact in the case. It contained no statements relating to the question whether Wills Engle expressly warranted the leather not to crock. It may have had some slight bearing on the relation of Wills Engle to the defendants, but in that regard there was no substantial controversy in the evidence, and the correspondence was helpful to the plaintiff, rather than otherwise. The communications had some bearing upon the question whether the defendants themselves warranted the leather. But the undisputed evidence in the case was all to the effect that they had not done so.

Section 269 of the Judicial Code as amended, 28 U.S.C. § 391, 28 U.S.C.A. § 391, provides as follows: "On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

■ Since the enactment of that statute, the rule of this Court has been that unless an appellant can show from the entire record the denial of some substantial right, there will be no reversal. Rich v. United States, 8 Cir., 271 F. 566, 570; Morgan v. United States, 8 Cir., 98 F.2d 473, opinion filed August 9, 1938; Automobile Underwriters of Des Moines, Iowa v. Bloemer, 8 Cir., 94 F.2d 474, 477; Little v. United States, 8 Cir., 93 F.2d 401, 407, order denying certiorari, 303 U.S. 644, 58 S.Ct. 643, 82 L.Ed. ——; Goldstein v. United States, 8 Cir., 63 F.2d 609, 614; Miller v. United States, 8 Cir., 21 F.2d 32, 36-38.

In Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 631, 79 L.Ed. 1314, the Supreme Court said: "Evidently Congress intended by the amendment to section 269 to put an end to the too rigid application, sometimes made, of the rule that error being shown, prejudice must be presumed; and to establish the more reasonable rule that if, upon an examination of the entire record, substantial prejudice does not appear, the error must be regarded as harmless."

In McCandless v. United States, 298 U. S. 342, 347, 348, 56 S.Ct. 764, 766, 80 L.Ed. 1205, the Supreme Court, in referring to § 269, said: "That section simply requires that judgment on review shall be given after an examination of the entire record 'without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties.' This, as the language plainly shows, does not change the well-settled rule that an erroneous ruling which relates to the substantial rights of a party is ground for reversal unless it affirmatively appears from the whole record that it was not prejudicial. United States v. River Rouge Co., 269 U.S. 411, 421, 46 S.Ct. 144 [147], 70 L.Ed. 339; Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 82, 39 S.Ct. 435, 63 L.Ed. 853; Williams v. Great Southern Lumber Co., 277 U.S. 19, 26, 48 S.Ct. 417 [419], 72 L.Ed. 761."

An examination of the entire record in this case has satisfied us that the plaintiff has failed to show the denial of any substantial right, and that it affirmatively appears from the whole record that no prejudicial errors affecting the substantial rights of the plaintiff were committed by the court below.

The judgment is affirmed.