## KIRK v. ST. JOSEPH STOCK YARDS CO.
### No. 14673.

United States Court of Appeals,
Eighth Circuit.

July 30, 1953.

Rehearing Denied Aug. 28, 1953.

John B. Gage, Kansas City, Mo. (John C. Landis III, St. Joseph, Mo., Earle W. Frost, John H. Kreamer, Gage, Hillix, Moore & Park, Kansas City, Mo., and Landis & Landis, St. Joseph, Mo., on the brief), for appellant.

R. A. Brown, Jr., St. Joseph, Mo. (Brown, Douglas & Brown, St. Joseph, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment in favor of the St. Joseph Stock Yards Company entered on a verdict directed by the court at the close of plaintiff's testimony. It was alleged in the complaint (designated as petition) that diversity of citizenship existed between the plaintiff and defendant and that the amount in controversy exceeded three thousand dollars exclusive of interest and costs; that defendant at all times here involved conducted and operated a public stockyard in the city of St. Joseph, Missouri, its stockyard being duly registered and posted with the Secretary of Agriculture pursuant to the provisions of the Packers and Stockyards Act of 1921, as amended, 7 U.S.C.A. § 181 et seq. and that it held itself out to render services and facilities in connection with the receiving, marketing, feeding, watering, holding, delivering, shipping, weighing, or handling in commerce of livestock; that plaintiff at all times material to the action was engaged in the business of producing, feeding, and marketing livestock and that on the morning of November 13th, 1948, he was the owner of approximately 8,800 head of sheep or lambs which had been shipped by him to defendant at its stockyard at St. Joseph, Missouri, for the purpose of marketing said lambs to packers at the stockyard after they had been suitably fed and prepared for sale at said yard; that under the provisions of the tariff duly filed with the Secretary of Agriculture pursuant to the provisions of said Packers and Stockyards Act, defendant charged plaintiff the sum of 15¢ per head for yardage; and after unloading them from the cars in which they were shipped to the stockyard said lambs were transferred to certain feeding sheds and lots for sheep owned and maintained by defendant for the purpose of preparing said lambs for marketing.

That under the provisions of said Packers and Stockyards Act it was the duty of defendant to furnish to plaintiff upon reasonable request without discrimination reasonable stockyard services at such stockyard in connection with the marketing, feeding, watering, holding, weighing, and handling of such lambs and to exercise reasonable care in respect to such services; that defendant's published tariff and rules and regulations filed with the Secretary of Agriculture provided a charge of 5¢ per head additional in respect to sheep for the holding and feeding thereof in addition to the yardage charge, which charge plaintiff paid with respect to said sheep; that defendant maintained the said stockyards, sheds and lots for the yarding and feeding of sheep designated as "The St. Joseph Stock Yards Co. (Sheep Feeding Division)"; that defendant fur-

nished at its stockyards sheep feeding facilities and services to owners of livestock in commerce, particularly to Swift & Company, a packer, under an arrangement whereby employees of defendant cared for and fed the sheep owned by Swift & Company with respect to which said additional charges of 5¢ per head for furnishing feeding facilities was not made applicable. Defendant however, as to other livestock owners, including plaintiff, desiring to use and using such stockyard services of defendant, claimed to have leased its sheep feeding and yarding facilities to a partnership called the Williams Feeding Company which used the facilities of defendant for the handling and feeding of sheep belonging to other livestock owners including plaintiff; that defendant in connection with feeding sheep and handling sheep for Swift & Company at a lesser charge and cost per head than that paid by plaintiff and other owners of livestock, furnished its own employees including night watchmen, to feed, care for and also to protect the sheep while so yarded from injury or damages for loss from dogs or other animals. It is then alleged that on the morning of November 13th, 1948, dogs entered the enclosure where plaintiff's sheep were being maintained, and killed or injured a large number of plaintiff's sheep; that the enclosure was not dog-tight, that no watchman was guarding the sheep and that the defendant knew the conditions of the enclosure, or in the exercise of proper care should have known; that dogs have a propensity for chasing and injuring sheep and this propensity is well known to all persons engaged in the livestock business; that the damages and injury so suffered by plaintiff was the result of defendant's failure to furnish proper facilities and services as required by said Packers and Stockyards Act. The other allegations go to the extent of injury to plaintiff's sheep and resulting loss or damages to plaintiff.

Defendant by its answer admitted the jurisdictional allegations, ownership of the stockyard, and that it maintained sheds and lots for the yarding and feeding of sheep, designated as the "St. Joseph Stock Yards Company (Sheep Feeding Division)"; that

it furnished sheep feeding facilities and services to owners of livestock and to Swift & Company; that its published tariff provided a charge of 5¢ per head in respect to sheep for the holding and fattening thereof; that the Williams Feeding Company did use a portion of the facilities of the defendant, its sheds and lots for the handling and feeding of sheep belonging to other livestock owners including plaintiff; that it furnished its own employees, including night watchmen, to feed and care for sheep belonging to Swift & Company; that plaintiff's sheep were in said stockyards as alleged, on November 13, 1948. As to all other allegations of the complaint defendant's answer was either a specific or general denial or such as to put plaintiff on his proof. Other allegations of the answer are not material to the issues now involved. We shall refer to the parties as they were designated in the trial court.

At all times material to this action plaintiff was in the business of buying, grazing, feeding and marketing lambs and other livestock, while defendant was the owner and operator of the stockyard at St. Joseph, Missouri. In the fall of 1948, plaintiff had 8,800 lambs on wheat field pasture in western Kansas. Owing to drought conditions it became apparent to plaintiff that he would not be able to finish fattening his lambs on the wheat pasture. He called Carl Montegna of the Williams Feeding Company, with whom he had been doing business for a number of years, and advised him that he was going to ship these sheep to the St. Joseph stockyard where the Williams Feeding Company had facilities for feeding and caring for lambs. He also called Harry Garlock, a representative of defendant, and told him that he was going to ship in more lambs for feeding and fattening and that Garlock replied to this information, "Fine and dandy." In the early part of November, 1948, he transported these lambs, billing them as follows: "* * * from Robert Kirk to Robert Kirk, care of Williams Feeding Company at the St. Joseph Stock Yards, St. Joseph, Missouri." In due course the shipment arrived at the stockyard where the lambs were unloaded and at once taken charge of by Williams Feeding Company. The Williams Feeding Company

had under lease certain facilities of the Stock Yards Company for the purpose of feeding sheep and preparing them for market. These facilities are described in the record as certain horse barns at the southeast part of defendant's property which bore the designation "Sheep Feeding Division." These barns were at all times mentioned in this case leased to Williams and Montegna, a sheep feeding firm. On the morning of November 13, 1948, dogs entered the pens where these sheep were being cared for, and chased, injured and stampeded the lambs so that they piled up one upon another, suffocating 471 lambs. The enclosure was not such as to prevent the entry of dogs and there were no watchmen protecting the sheep against such a raid.

Plaintiff in 1944, 1945 and 1947 had made similar shipments of sheep to be fattened at the St. Joseph stockyards and they were all fed at the stockyard by Williams Feeding Company, and all of plaintiff's transactions with reference to the handling of the sheep, their feeding and care were with that company. At the time of the first shipment in 1944 he called his commission company at St. Joseph and requested that the company send him a competent man to assist him in sorting out the fat lambs. A Mr. Cook came to assist plaintiff and with him was a Mr. Wilkerson, an employee of the Stock Yards Company and plaintiff learned from Wilkerson the advantages of the feed setup at the St. Joseph stockyard.

At the times in question the defendant had published its "Schedule of Charges for Feed and Service." Item 11 reads as follows: "This Company will furnish, upon reasonable request, feed lots and suitable sheds for the holding and fattening of livestock (apart from its regular facilities provided for the yarding and feeding of livestock for immediate sale), the feeding and care to be the sole responsibility of the owner of such livestock. For such facilities the following charges will be made:
Sheep Feeding .......... 5¢ per head.

This charge is in addition to any charges for yardage and feeding of livestock offered for sale at this company's stockyards."

While plaintiff's sheep were being fed and cared for by Williams Feeding Company, defendant at another location was furnishing certain feeding and yardage services to Swift & Company, and was caring for sheep for that company. Defendant ground, mixed and fed the feed, unloaded the sheep and also charged for yardage and storage in accordance with the provisions of its tariff. Swift & Company furnished its own supervisor, who told defendant how to feed the lambs and how to mix the feed. Defendant thus handled these sheep and furnished watchman service as a result of the special arrangements made with Swift & Company and an overall charge was made to Swift & Company for all of these services.

The Williams Feeding Company purchased feed from Swift & Company, paid defendant a charge for grinding and mixing that feed and for unloading and storage but Williams Feeding Company supervised the feeding of the sheep entrusted to them and carried on the sheep feeding operations. The charge of 5¢ per head was charged Williams Feeding Company in accordance with the proper tariff provision. Further facts will be developed in the course of this opinion.

The trial court on the undisputed evidence as produced by plaintiff was of the view that plaintiff's dealings were entirely with the Williams Feeding Company and not with the defendant; that he had not requested any service from the defendant and had not been discriminated against. From the judgment entered plaintiff urges error and seeks reversal on substantially the following grounds: (1) the court erred in holding that the defendant could delegate to a third person performance of a stockyard service and thereby be relieved of legal responsibility for the manner in which such stockyard service was performed; (2) the court erred in holding that plaintiff made no request of defendant for provision of sheep feeding service; and (3) the defendant by failing to render the same service with respect to plaintiff's lambs as it rendered to others and by failing to meet the standard of care required of it became liable to plaintiff for damages to his lambs resulting from such discriminatory performance of its services.

■ At the very outset we think it important to determine the character of this action and the theory upon which it was tried in the lower court because it has been intimated that plaintiff sought to recover on two causes of action, one a common law cause of action and the other a cause of action under the provisions of the Packers and Stockyards Act. An inspection of the complaint clearly shows that only one cause of action was attempted to be alleged. The complaint is paragraphed consecutively and specifically charges that the action is brought under the provisions of the Packers and Stockyards Act; in fact the complaint is entitled "Petition for Damages under the Packers and Stockyards Act." The answer treated the action as one brought under the provisions of that act and the court treated the action as so brought and plaintiff in his brief declares that "This is an action under the Packers and Stockyards Act of 1921, as amended etc.", and in his brief there is no suggestion that he is also seeking to recover on a common law cause of action for damages. The defendant in its brief also says, "The action was brought under the Packers and Stockyards Act of 1921, as amended etc." It is elementary that on appeal the appellant must adhere to the theory on which the case was tried in the lower court. Barnsdall Refining Corporation v. Cushman-Wilson Oil Co., 8 Cir., 97 F.2d 481; Petersen v. Chicago, Great Western Ry. Co., 8 Cir., 138 F.2d 304; Valley Shoe Corporation v. Stout, 8 Cir., 98 F.2d 514; Gulf, Mobile & Ohio R. Co. v. Williamson, 8 Cir., 191 F.2d 887. In Valley Shoe Corporation v. Stout, supra, we said [98 F.2d 518]: "Moreover, this Court, on appeal, must adhere to the theory upon which the case was tried in the lower court." And in Barnsdall Refining Corp. v. Cushman-Wilson Oil Co., supra, we said [97 F.2d 485]: "We must, on appeal, adhere to the theory on which the case was tried in the lower court." Any other practice would be manifestly unfair to an appellee and to the trial judge. On appeal all intendments are in favor of the correctness of the judgment. In other words, error will not be presumed but the burden is on the appellant to show that it exists. The trial court can not properly be charged with error unless it has had an opportunity to pass upon the question urged on appeal and hence it is held that an appellant may not seek reversal on a different theory than that on which he tried his case in the lower court.

■ Defendant as the owner and operator of a commercial stockyard which was a public utility subject to reasonable regulations, had the duty of furnishing, upon reasonable request, without discrimination, reasonable stockyard service and to establish, observe and enforce just, reasonable and non-discriminatory regulations and practices in respect to the furnishing of stockyard service. Packers and Stockyards Act of 1921, 7 U.S.C.A. § 201 et seq. As to the specific duties imposed upon it as such a public utility it could not escape liability for the failure to furnish such a service or for negligence in connection with the service so required by delegating to others the duty to perform it. It is here urged that defendant attempted to delegate its duty to perform this public service to the Williams Feeding Company. It leased a portion of its premises to that concern for the purpose of feeding and caring for sheep therein. This was a legitimate use of its stockyard facilities and it charged that concern the regular published rates. The published tariff made no provision for any service by defendant other than the leasing of its facilities at so much a head. Under its published tariff it was obligated to lease these facilities upon reasonable request to anyone who might apply. The Williams Feeding Company made such reasonable request and in compliance with its manifest duty the facilities were furnished to the Williams Feeding Company. This transaction seems to have been a part of defendant's regular course of business of furnishing to anyone upon reasonable request its available service and facilities. It was not incumbent upon defendant to inquire of the Williams Feeding Company whose sheep it proposed to feed in defendant's facilities. As the Williams Feeding Company had a right upon reasonable request to be furnished these facilities it was defendant's duty to furnish them and

in so doing it did not delegate to the Williams Feeding Company any duty it owed to anyone else but it was simply responding to the reasonable request of the Williams Feeding Company.

■ Cases relied on by plaintiff are readily distinguishable in their facts. There is no doubt that a public utility can not delegate to a third party a duty imposed upon it by law and thus avoid liability. Defendant, however, was not obligated by law or contract to furnish to anyone the type of service plaintiff received from the Williams Feeding Company. As above noted the only sheep feeding service it held itself out to perform under the Packers and Stockyards Act was to furnish pens in accordance with the provisions of its published tariff. The Williams Feeding Company undertook to feed and care for plaintiff's sheep. This was not a duty which defendant owed to plaintiff and plaintiff at no time made any request of defendant for facilities in which to feed his sheep nor did he request any service of the defendant in connection with the feeding or care of his sheep.

In leasing a portion of its premises to the Williams Feeding Company defendant did not by act or deed indicate that it was delegating to it a function or duty which it owed to owners of stock who might make request for such facilities. Item 9 of its published schedule of charges and rules and regulations promulgated with the approval of the Department of Agriculture provides as follows: "Special services in the handling of livestock, requested by the owner, not otherwise provided for, will be charged for under special agreement." Item 11 of the published schedule, already set forth in this opinion, contains other pertinent provisions. The service which plaintiff was receiving from the Williams Feeding Company had to do with the feeding and care of these sheep. Plaintiff had no contract or special arrangement with the defendant to perform such service and Item 11, above quoted, specifically provides that the feeding and care of livestock shall be the sole responsibility of the owner of such livestock. We conclude that defendant did not delegate to the Williams Feeding Com-

pany any duty which as a public utility it owed to plaintiff.

It should be noted in passing that plaintiff's sheep were not in the strict sense of the word, moving in commerce. They were not being held for immediate shipment but were being fattened to be disposed of either locally or by transportation at some future time. When these sheep were transported from the Kansas wheat fields they were not consigned to the defendant but to the plaintiff in care of the Williams Feeding Company and on arrival at the stockyard they were properly delivered to the Williams Feeding Company. City Nat. Bank v. El Paso & N. E. R. Co., 262 U.S. 695, 43 S.Ct. 640, 67 L.Ed. 1184; Com. v. People's Exp. Co., 201 Mass. 564, 88 N.E. 420.

Plaintiff had in prior years, notably in 1944, 1945 and 1947, had his sheep fed and cared for at the stockyard by Williams Feeding Company exactly as was being done in the instant case. He knew all about the condition of the pens and premises where his sheep were being fed. He requested no service from the defendant, either by way of feeding or guarding the sheep, which under Item 9 of the published tariff he might have done. He had never, according to his own testimony, requested any special service in connection with the feeding of his sheep. As has been observed, this was not an isolated transaction. It was a well established course of business between plaintiff and the Williams Feeding Company. The Williams Feeding Company had been handling plaintiff's stock in this same manner for a number of years and the plaintiff looked to the Williams Feeding Company at all times, and not to the Stock Yards Company, for the care and safety of his sheep. The Stock Yards Company's contract was with the Williams Feeding Company and the plaintiff's contract was likewise with the Williams Feeding Company. If his sheep were not properly protected and cared for it was because of the negligence of the Williams Feeding Company or his own negligence in failing to secure from that company watchmen for his sheep, because the tariff specifically provided that it was the duty of the owner to feed and care for the stock,

and Williams Feeding Company had the property under lease so that so far as appears the Stock Yards Company not only had no responsibility with reference to the care and protection of the sheep but had no right to interfere with their care. It is significant that after the loss here involved plaintiff obtained special service in the matter of guarding his sheep, not from defendant, however, but from the Williams Feeding Company.

■ So far as the claim of discrimination is concerned, we think it wholly without merit because plaintiff made no request of the defendant for service and in fact had no dealings with the defendant with reference to caring for his sheep. This would seem to preclude any claim based upon an alleged discrimination but if it can be said that the question is presented by this record still we think it wholly without merit. True, Swift & Company was receiving special service for which it paid and for which it made special arrangement in accordance with Item No. 9 of the published tariff. It was certainly not incumbent upon the defendant to insist that regardless of the desires of the owners of stock each should have the same service. It would be as unreasonable as to contend that a public carrier of passengers must furnish only one class of service—either all passengers must ride in the Pullman car or in the coach car. The trial judge in disposing of the case, in a memorandum opinion among other things said:

"At that time the Williams Feeding Company was engaged in the feeding of sheep in preparation for market, and had an agreement with the Stock Yards Company by which it leased certain premises and facilities from it for the purpose of carrying on its business of feeding and caring for sheep. For the services it paid the sum of 5¢ per head to the St. Joseph Stock Yards Company. It had absolutely no connection whatsoever with the Stock Yards Company, except the leasing of a portion of its premises as aforesaid. * *

"The Stock Yards Company posted its regulations and tariffs. These regulations provided that the feeding of sheep should be under the supervision of the owner. At no time did the plaintiff request any service or facility of the Stock Yards Company, but as heretofore stated, he billed his sheep to himself, in care of the Williams Feeding Company, and had all of his dealings, made all of his arrangements, and paid all of his bills to them."

We are in full accord with the views of the trial court thus expressed. There was no error in directing a verdict for the defendant and the judgment appealed from is therefore affirmed.